FORST, J.
The trial court issued a final judgment of injunction for protection against domestic violence. We conclude that the trial court applied the incorrect standard and that the evidence, when properly examined, does not support the injunction. Accordingly, we reverse.
Background
Appellant Thomas Mitchell and Appellee Ivonne Mitchell were divorced but still living together on January 22, 2015. Throughout the afternoon and into the late evening of that day, the parties had a text message conversation that frightened Ap-pellee. Soon thereafter, she filed a petition for injunction for protection against domestic violence.[1]
Sometime in the next two weeks, Appellant was hospitalized for three days under the Florida Mental Health Act, a/k/a the Baker Act.[2] The record on appeal provides no details regarding this hospitalization.
On February 3, 2015, a hearing was held on Appellee’s petition. Appellee introduced “a copy of all [her] text messages” into evidence:
Text Messages from January 22, 2015[3]
14:37 Appellant: How is your day going? When do you think you are leaving?
14:56 Appellee: It’s going ok. I think it will be around 5. * * *
14:57 Appellee: How did it go at the dentist?
15:01 Appellant: Ok, Didn’t go. I have to take all the medicine at once. So now it’s Monday. I am so depressed I don’t know what to do Ivonne. I miss you so bad I can’t think. I am out of my league. I have cried all day. I’m sorry. But I love you so much.
*1098 15:11 Appellee: I’m sorry
15:12 Appellant: You don’t meet people in your life like we did. I can’t throw it away. You are amazing and this is so wrong. Dig deep please.
15:17 Appellee: Tom. We haye been through this.
15:18 Appellant: Sorry. Just shoot me ivonne. I can’t live like this
15:22 Appellant: I am sorry to want it to work. God give it one chance I have changed. I cannot believe you can abandon me that easy. FIGHT FOR ONCE IN YOUR MARRIAGE IVONNE. WE HAVE FEW YEARS LEFT!!!
15:31 Appellant: It will work. I can’t quit. Someone upstairs is pushing me. 15:37 Appellant:' We could have a wonderful life ivonne with each other. I have corrected my behavior. PLEASE GIVE ME A CHANCE MARRIAGE IS NOT A SMALL THING. PEOPLE GO THROUGH TREMENDOUS TRIALS AND WORK .IT OUT. I PROMISE I WILL MAKE YOU HAPPY THE REST OF MY LIFE. PLEASE STAND UP AND FIGHT. * * * WHATEVER ANYONE ELSE THINKS.
15:43 Appellant: It is destroying everything. in me .and my family. What’s left of them for me.
15:47 Appellee:' Tom. I don’t even know how to respond. We have been .through this. I have already done all the fighting I’m going to do.
15:49 Appellee: We are divorced. You need to get your own place. You need to establish yourself. We can be friends and see what comes from there.
15:52 Appellant: You’ve broken me. I can’t believe you give up so easy
15:54 Appellant: I’ll leave next month but after that I will be alone and it will be. UGLY, When did your heart become so mean and hard
15:58 Appellant: Why are you so hard. My god ivonne I didn’t * * * anyone. Yes I lied and I’m sorry but you can’t find it in your heart to forgive me. That’s the yoga life
16:03 Appellee: I’m leaving Orlando in about 30 minutes On my way back.
16:06 Appellant: I will not get an apartment. I will just leave. You have shattered me to nothing. My kids don’t talk to me what do I have in life NOTHING. you have no feelings or heart. I cannot believe you’re' going to quit on your 3rd marriage. I thought you were much stronger than that. Thank you for being a quitter. Goodbye:-(
16:08 Appellant: You have a big surprise coming your way. I love youv for the last time
16:22 Appellant: * * *
17:04 Appellant: BTW, I BOUGHT A SHOTGUN JUST SO YOU KNOW. ITS FOR ME NOT FOR YOU ...
17:11 Appellant: Just wanted to let you know so your not surprised
17:19 Appellant: I got turned down by 2 apartments today
17:37 Appellee: I told you I don’t want a weapon in the house.
17:38 Appellant: And....
17:41 Appellant: Don’t * * * with me I just had a text war with [Appellant’s son] Mason. He will stay with his mother as she has filled his head with * * *
17:42 Appellant: I HAVE NOTHIN IN LIFE IVONNE
17:45 Appellant: I disowned him ivonne. Thanks for you gentle “heart and caring”
17:52 Appellant: I answered there was no one there. Eat whatever your eating and try again. ' I HAVE LOST EVERYTHING IN. DO YOU *'* * UNDERSTAND OR ARE YOU CLUELESS
*1099 17:55 Appellant: I GUESS - IT’S CLUELESS •
18:26 Appellant: You can’t hear the truth. Can you
18:28 Appellant: * * *
18:36 Appellant: Ya wanna call feel free. I’ll act so very nice
18:48 Appellant: Maybe someday your heart will open up .... probably not — and you can fight for a relationship.
18:49 Appellant: Stop paying masons college fund. I will not reimburse you
20:27 Appellant: If you’re not coming home let me know so I can set the alarm
20:29 Appellee: You’ve scared me. I don’t know what to do •
20:29 Appellant:. Lamp. Yeah
20:31 Appellant: The police left after I insulted them and hung up.
20:32: Appellánt: Like I have ever hurt you. I am not taking anymore ⅜ * * from anyone. I’ll rip their tounge out.
20:35 Appellant: Come home be nice
20:37 Appellant: I am surprised you have enough feelings left to feel scared
20:39 Appellant: Should I set the alarm?
21:16 Appellant: R U coming home or not..
21:21: Appellant: Hello? ? ? ? ?
21:22 Appellee: No, I’m not. I’m too afraid
21:22: Appellant: Give-me a break
21:24 Appellant: Ok, don’t answer the phone. Waste your money. Unfounded fear
21:26 Appellant: I Cannot believe you. You actually think I would hurt you. Have fun at your boyfriends
21:28 Appellant: Are you ever coming home again?
21:30 Appellant: Oh I see you are not talking to me now. That’s mature Ivonne
21:30 Appellant: I’ll be out by Feb 28th and you won’t have to see me anymore
21:51: Appellant: Goodnight Ivonne. I hope you sleep well.
22:04 Appellant: Will I see you tomorrow? Please answer me Ivonne.
22:09 Appellant: I am sorry if I scared you Ivonne. ■
22:20 Appellant: Please talk to me ivonne. I don’t even know if you are safe ■
22:40 Appellant: Ivonne all I can do is apologize.. I am sorry. My emotions got the best of me today. My lack of sequel could, be part of it too. I would NEVER hurt you. You know that. Just let me know you are ok please. 23:08 Appellant: I will bring the shotgun back tomorrow.
Text Messages from January 26, 2015
18:00 Appellant: Please don’t have me arrested I am outside and done have my oxytocin or opana. May I pi tr asexual have it
18:02 Appellant: Sorry I found them.
Text Messages from January 28, 2015
11:06 Appellant: It looks like i may have a place next week.' I still want the furniture please. I also still a lot of stuff there. Please respond
11:11 Appellee: You’re not supposed to communicate with me directly. You’re allowed to return with a cop to collect your remaining stuff. We can work out the details at the hearing. Read the injunction.
11:16 Appellant: You said to contact you in your letter
11:17 Appellant: You violated not me
11:17 Appellee: Within the tenets of the injunction. We can discuss, at the hearing.
*1100 11:19 Appellant: So be it. You said to sue you would be reasonable. I guess not
Appellant testified that portions of the text exchange between he and Appellee were omitted from the exhibit filed by the latter. He claimed that “[t]here was a whole conversation that went with that of about ten plus sentences” that related to the sale of two of Appellee’s guns, with Appellee responding that Appellant need not buy her replacement guns and “could keep the money for your apartment.” Appellant’s testimony that the trial exhibit of the text message exchange was an incomplete version was not rebutted by Appellee, nor addressed by the trial court.
Appellee testified that, during the text message exchange, she was in contact with Appellant’s first wife and the daughter of Appellant and the first wife. Appellee testified that this conversation involved a discussion of threats that Appellant had made towards his first wife and the first wife’s son. However, neither the first wife nor any of the children testified at the trial.
The trial court determined that Appellant’s “behavior” was “scaring” Appellee and, based on that finding, granted a permanent injunction against Appellant. The injunction required no contact between the parties and further required Appellant to surrender any concealed weapon permits, gun licenses, and firearms to law enforcement. This appeal follows.
Analysis
“An order imposing an injunction is reviewed for an abuse of discretion. A trial court abuses its discretion by entering a domestic violence injunction when the ruling is not supported by competent, substantial evidence.” Selph v. Selph, 144 So.3d 676, 677-78 (Fla. 4th DCA 2014).
Section 741.30(l)(a), Florida Statutes (2015), creates a cause of action for an injunction for protection against domestic violence on behalf of a family or household member who “has reasonable cause to believe he or she is in imminent danger of becoming the victim of any act of domestic violence.” Id. When proceeding under this section, “the danger feared [must] be imminent [and] the rationale for the fear must be objectively reasonable.” Oettmeier v. Oettmeier, 960 So.2d 902, 904 (Fla. 2d DCA 2007) (emphasis added).
In showing these elements, “general harassment does not suffice.” Stone v. Stone, 128 So.3d 239, 241 (Fla. 4th DCA 2013) (quoting Young v. Smith, 901 So.2d 372, 373 (Fla. 2d DCA 2005)). Phone calls and text- messages have, in some cases, been found by Florida courts to constitute general harassment and therefore held insufficient to ground an injunction. E.g. id. at 241; Gustafson v. Mauck, 743 So.2d 614, 616 (Fla. 1st DCA 1999). Similarly, “verbal violence,” mental instability, a bad temper, depressive and suicidal statements, angry messages, vague actions, and general conditional future threats without overt action implying imminence have been found to be insufficient. See Horowitz v. Horowitz, 160 So.3d 530, 532 (Fla. 2d DCA 2015); Kunkel v. Stanford ex. rel. C.S., 137 So.3d 608, 609 (Fla. 4th DCA 2014); Weisberg v. Albert, 123 So.3d 663, 663 (Fla. 4th DCA 2013); Malchan v. Howard, 29 So.3d 453, 454 (Fla. 4th DCA 2010); Oettmeier, 960 So. 2d at 903. Put generally, “uncivil behavior” and actions that “paint[] ... a typical, albeit unfortunate, picture of a domestic relationship gone awry” cannot ground this sort of injunction. Young v. Young, 96 So.3d 478, 479 (Fla. 1st DCA 2012); Oettmeier, 960 So.2d at 904.
In granting Appellee’s request for an injunction, the trial court explained that “[i]n Florida[,] the only question is, is there behavior, sir on your part that scares her?” Finding Appellee’s “testimony to be credible that you’re scaring her,” the trial *1101 court granted the request for an injunction.
The trial court’s characterization of the law is incorrect. The question is not whether Appellee was subjectively scared, but whether her fear was objectively reasonable. Oettmeier; 960 So.2d at 904. And importantly here, the appropriate inquiry looks towards the immediate future rather than some distant possibility of trepidation. See 741.30(l)(a), Fla. Stat. (2015) (looking to whether the petitioner for the injunction “has reasonable cause to believe he or she is in imminent danger” (emphases added)); Spiegel v. Haas, 697 So.2d 222, 224 (Fla. 3d DCA 1997) (discussing the “future violence” requirement), superseded in other part, Patterson v. Simonik, 709 So.2d 189, 191 n. * (Fla. 3d DCA 1998).
 “In determining whether the [petitioner’s] fear is reasonable, the trial court must consider the current allegations, the parties’ behavior within the relationship, and the history of the relationship as a whole.” Malchan, 29 So.3d at 454 (quoting Giallanza v. Giallanza, 787 So.2d 162, 164 (Fla. 2d DCA 2001)). After a close examination of the record, the text messages, and the surrounding context, we hold that it was not objectively reasonable for the Appellee to have a fear for her own safety going forward from the date of the hearing. See Sanchez v. Sanchez, 48 So.3d 199, 200 (Fla. 2d DCA 2010) (“Ms. Sanchez offered no reason to believe that she herself was in imminent danger....”). The text messages certainly depict some desperation and disappointment on the part of Appellant, but importantly contain no overt (or implicit) threats. At one point, Appellant stated “You have a big surprise coming your way. I love youv [sic] for the last time.” However, there is no explanation of this comment, and in context it could be read as Appellant threatening to harm himself.
“Even a representation that the offender owns a gun and -is not afraid of using it is insufficient to support an injunction absent an overt act indicating an ability to carry out the threat or justifying a belief that violence is imminent.” Sorin v. Cole, 929 So.2d 1092, 1094 (Fla. 4th DCA 2006). Here, there is no evidence in the record of any past incidents or threats of violence on the part of Appellant. Appellant testified, without contradiction from Appellee, that “I have never touched Mrs. Mitchell in 12 years. I have no prior history of domestic violence. Ho prior history of assault. No prior history of anything but traffic tickets, sir.”
Conclusion
The judgment at issue is an injunction with no end date. It deprives Appellant of certain civil liberties, including his Second Amendment rights. The trial court’s injunction was based on a finding that Appellant’s “behavior” was “scaring” Appel-lee. Protecting potential victims of domestic violence must be of the utmost concern of Florida’s courts. However, as discussed above, there is no evidence in the record that any fear on the part of Appellee of “imminent harm” as of the date of the hearing was objectively reasonable. We therefore reverse the trial court’s grant of the final judgment of injunction.

Reversed.

WARNER and CONNER, JJ., concur.

.The record here gives us pause because it seems to indicate that the petition was filed with the Broward County clerk at 9:26 a.m. on January 22. The text message conversation described in the petition, however, did not begin until 2:37 p.m,, and events referenced in the petition did not occur until around 7:00 p.m. Because we reverse based on other considerations, this discrepancy does not directly affect this case. It is concerning, however, that the timestamp placed on the petition by the clerk’s office does not reflect the actual time the petition was submitted.

. Ch. 394, Fla. Stat. (2014).

. Some of the text messages of little relevance to our opinion have been replaced by * * *. Spelling and grammar errors have been left uncorrected.