DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DOUGLAS JOSEPH THOMAS,**
Appellant,

v.

**CAITLIN LINGLONG LI,**
Appellee.

No. 4D2023-1437

[July 17, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Susan F. Greenhawt, Judge; L.T. Case No. DVCE23-001552.

Melody Ridgley Fortunato of Fortunato & Associates, P.A., Fort Lauderdale, for appellant.

No appearance for appellee.

ARTAU, J.

Douglas Joseph Thomas ("Thomas") appeals from a final judgment granting a permanent injunction for protection against domestic violence to his now ex-wife, Caitlin Linglong Li ("Li"). We reverse because the evidence Li presented in support of the trial court's issuance of the permanent injunction was insufficient as a matter of law to establish either that she was a victim of domestic violence or that she had reasonable cause to believe that she was in imminent danger of becoming a victim of domestic violence, as required by section 741.30, Florida Statutes (2022).

## Background

The testimony at the injunction hearing established that on October 15, 2022, the couple argued while on a trip to the beach. Apparently, Thomas did not want Li to sit in the front seat of the car as they were leaving the beach that day. Although Thomas denied doing so, Li testified that he "hip-checked" her by "bump[ing her] with his hip" to prevent her from getting in the front seat prior to their drive home.

After returning home, Thomas entered the bathroom while Li was showering and dumped ten kitchen knives onto the shower floor, stating "[h]ere, if you want to do damage, do damage." Thomas explained during his testimony that Li had the harmful habit of cutting herself and because he believed she was cutting herself in the shower, he threw "a drawer full of utensils" into the shower to "shock" Li out of cutting herself.

Li testified that, after her shower, she went in the den of their home. She explained that Thomas followed her and set a loaded gun on the table in front of her and told her that if she really wanted to hurt herself, "here's something to do it with." Thomas then left the home and, on his way out, told her that when he came back, he hoped she was dead. After he left, Li "unloaded the gun, set the magazine in one place, all bullets in another, and the gun in a third place." Li testified that, when Thomas returned to the residence, he expressed disappointment that "the floor wasn't covered in blood" and she was not dead.

Thomas denied that the gun incident occurred. However, an email that he had sent to Li in November 2022, which was introduced into evidence at the hearing, included the admission that he had "lost it that day" and "was super angry and said a lot of things [he] shouldn't have said."

Li testified that Thomas's confrontational behavior continued the day after the beach trip. As she explained in her testimony, while she was "taking a call in the guest bedroom" the next day, Thomas entered the room "holding a large kitchen knife" and told Li that "if [she] really wanted to hurt [her]self," the knife was something that could "do more damage." Thomas, however, denied that this incident ever occurred.

Li moved out of the parties' marital residence two days later—on October 17, 2022. While she explained in her testimony that she did so "because [she] no longer felt that it was safe for [her] to be in the same place as [Thomas], or for him to know where [she] was[,]" she did not seek an injunction for protection against domestic violence at that time.

Thomas moved out of the marital residence in late December 2022, when he moved to South Carolina to start a new job.

Despite Thomas having moved out of Florida, Li did not return to the marital residence until late February or early March 2023. Upon Li's return, she testified that she found her belongings packed up "in the corner of the house" with "notes all over them" written in Thomas's handwriting. Li also testified that Thomas had "scribbled numerous things on [her] mattress" that "were to the effect of wishing [her] ill," or

"hop[ing] that bad things would happen to [her]." The messages, as introduced into evidence, were angry and accusatory, but not threatening.

Li testified that between November and December 2022, Thomas regularly sent emails to her personal and work emails from multiple different email addresses despite her request that he not communicate with her. During this period, Thomas emailed Li at least once every two weeks and sometimes five times in one day. Li testified that she regarded the tone of his emails as vindictive and angry. However, the substance of his emails mostly lamented the demise of the parties' relationship and laid blame for its failure on Li. Thomas's emails during this period expressed sadness and a sense of betrayal, but never threatened Li or indicated in any way that he intended to return to Florida.

Li unequivocally testified that Thomas never threatened her or indicated that he wished to harm her. Yet she still testified that she was afraid and believed he will return to Florida.

The trial court found Li was either "a victim of domestic violence" or had "reasonable cause to believe that []she [was] in imminent danger of becoming a victim of domestic violence[.]" Based on this finding, the trial court granted Li a permanent injunction[1] that not only prohibited Thomas from engaging in any acts of domestic violence against her, but also directed him not to have any contact with her or be within 500 feet of her residence or 100 feet of her car, or deface or destroy her personal property, including her car. The trial court further directed Thomas to surrender to law enforcement all firearms in his possession as well as any concealed weapons permits or other gun licenses he might have.

## Analysis

We review the granting of an injunction for protection against domestic violence under the abuse of discretion standard of review. *See Chiscul v. Hernandez*, 311 So. 3d 55, 57 (Fla. 4th DCA 2021) (citing *Selph v. Selph*, 144 So. 3d 676, 677 (Fla. 4th DCA 2014)). As this Court has explained, "[a] trial court abuses its discretion by entering a domestic violence injunction when the ruling is not supported by competent, substantial evidence." *Id.* at 57-58 (quoting *Selph*, 144 So. 3d at 677-78).

Section 741.30 authorizes the statutory "cause of action for an

---

[1] Unless otherwise specified, permanent injunctions for protection against domestic violence "remain in effect until modified or dissolved." § 741.30(6)(c), Fla. Stat. (2022).

injunction for protection against domestic violence." § 741.30(1), Fla. Stat. (2022).  The statute permits a trial court to issue such an injunction upon proof that "the petitioner is *either* the victim of domestic violence as defined by s[ection] 741.28 *or* has reasonable cause to believe he or she is in imminent danger of becoming a victim of domestic violence[.]"  § 741.30(6)(a), Fla. Stat. (2022) (emphasis added); *see also Lopez v. Lopez,* 922 So. 2d 408, 410 (Fla. 4th DCA 2006) ("For a court to issue a section 741.30 injunction, a petitioner must establish that he or she is either a 'victim of domestic violence as defined in section 741.28 or has reasonable cause to believe he or she is in imminent danger of becoming the victim of any act of domestic violence.'" (quoting § 741.30(1)(a), Fla. Stat. (2005))).

Section 741.28(2), Florida Statutes (2022), defines the term "domestic violence" as "any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another family or household member."  In the absence of evidence establishing that a petitioner is currently a victim of domestic violence, only evidence establishing "an objectively reasonable apprehension that he or she is in 'imminent danger of becoming'" such a victim will be considered sufficient to support issuance of a domestic violence injunction. *Chiscul,* 311 So. 3d at 58 (quoting *Randolph v. Rich,* 58 So. 3d 290, 291 (Fla. 1st DCA 2011)).

However, a person cannot be considered a current domestic violence victim, or have an objectively reasonable fear of becoming one, based on actions that are "too remote in time" and therefore "stale."  *See, e.g., id.* at 57 (agreeing with a former husband that his former wife's evidence in support of issuance of a domestic violence injunction was "too remote in time for purposes of showing that she was in imminent danger of becoming a victim of domestic violence"); *see also Dickson v. Curtis,* 338 So. 3d 1001, 1005 (Fla. 3d DCA 2022) ("Florida courts have found that the remoteness of a prior act of domestic violence or abuse may render the entry of a domestic violence injunction improper."); *Phillips v. Phillips,* 151 So. 3d 58, 59 (Fla. 2d DCA 2024) (determining evidence insufficient to support issuance of domestic violence injunction where "there had been no violence or threats of violence . . . since the parties' separation four months before [the filing of] the domestic violence petition").

Here, the proof presented at the final hearing established that, since the parties' physical separation in October 2022, they have neither cohabitated nor seen one another.  In fact, they lived apart for almost five months before Li filed her petition and almost eight months before issuance of the injunction.

4

In addition, the emails upon which Li relies in support of her apparent fear that Thomas might return to Florida and harm her were sent in November and December 2022, almost three months before she filed for the injunction and almost six months before entry of the injunction itself.

On remarkably similar facts, we reversed a judgment granting issuance of a permanent domestic violence injunction, determining that the evidence presented in support of issuance of the injunction was insufficient as a matter of law. *See Chiscul*, 311 So. 3d at 57-58. In *Chiscul*, we held that the former wife's proof was "insufficient as a matter of law" and "too remote in time for purposes of showing that she was in imminent danger of becoming a victim of domestic violence." *Id.* at 57. As we explained:

> [T]he [former] wife's testimony largely described incidents that occurred before the parties' separation. Since their separation, the only contact between the parties was the [former] wife's allegation that the [former] husband followed her to a chiropractor's appointment once and left her a message informing her he was going forward with the divorce. These later acts were simply insufficient, as a matter of law, to establish a fear of imminent danger.

*Id.* at 58.

With respect to the one possible act of physical violence alleged in *Chiscul*, we determined that the incident the former wife described during her testimony could only "have occurred between two to six months prior to the filing of the petition" given the circumstances surrounding the parties' brief relationship. *Id.* We concluded that such an "isolated incident, absent additional evidence, was insufficient to warrant a permanent domestic violence injunction[.]" *Id.*

We further explained in *Chiscul* that, "[i]n determining whether a petitioner has reasonable cause to believe that he or she is in imminent danger of becoming a victim of any act of domestic violence, the trial court 'must consider the current allegations, the parties' behavior within the relationship, and the history of the relationship as a whole.'" *Id.* (quoting *Zarudny v. Zarudny*, 241 So. 3d 258, 262 (Fla. 3d DCA 2018)).

Moreover, while we recognize that "[t]here does not appear to be a bright line rule" as to what actions or conduct should "be considered too remote in time to support entry of a domestic violence injunction," *Dickson*, 338 So. 3d at 1005, we hold that in the absence of any proof of recent threats

5

coupled with overt action directed to Li from Thomas, the trial court abused its discretion in determining that Li was a victim of domestic violence or that she had reasonable cause to believe that she was in imminent danger of becoming a victim of domestic violence, as required by section 741.30.  As we have explained:

> Phone calls and text messages have, in some cases, been found by Florida courts to constitute general harassment and therefore held insufficient to ground an injunction.  Similarly, verbal violence, mental instability, a bad temper, depressive and suicidal statements, angry messages, vague actions, and general conditional future threats *without overt action implying imminence* have been found to be insufficient. Put generally, uncivil behavior and actions that paint a typical, albeit unfortunate, picture of a domestic relationship gone awry cannot ground this sort of injunction.

*Mitchell v. Mitchell*, 198 So. 3d 1096, 1100 (Fla. 4th DCA 2016) (emphasis added) (internal citations, quotations, and alterations omitted).

## Conclusion

We therefore conclude that Thomas's behavior toward Li, immediately prior to their separation in October 2022, and continuing until he moved to South Carolina in December 2022, cannot as a matter of law constitute competent, substantial evidence establishing that Li either was a current victim of domestic violence, or reasonably believed she was in imminent danger of becoming such a victim, because no proof was presented as to any more recent incidents or contact between the parties.  Accordingly, the injunction is reversed, and the trial court is directed on remand to enter an order vacating it.

*Reversed and remanded with instructions.*

WARNER and LEVINE, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

6