MORRIS, Judge.
Kirk M. Alderman appeals a final judgment of injunction for protection against dating violence. Because Faylene A. Thomas did not demonstrate that she had reasonable cause to believe she is in imminent danger of becoming the victim of another act of dating violence, we reverse the final judgment of injunction.[1]
Section 784.046(2)(b), Florida Statutes (2012), provides in pertinent part:
Any person who is the victim of dating violence and has reasonable cause to believe he or she is in imminent danger of becoming the victim of another act of dating violence, or any person who has reasonable cause to believe he or she is in imminent danger of becoming the victim of an act of dating violence, or the parent or legal guardian of any minor child who is living at home and who seeks an injunction for protection against dating violence on behalf of that minor child, has standing in the circuit court to file a sworn petition for an injunction for protection against dating violence.
Under this provision, an adult in a dating relationship may seek an injunction under two sets of circumstances: (1) if that person is a victim of dating violence and has reasonable cause to believe he or she is in imminent danger of becoming the victim of another act of dating violence or (2) if that person has reasonable cause to believe he or she is in imminent danger of becoming the victim of an act of dating violence. In either case, the person must have reasonable cause to believe he or she is in imminent danger of becoming the victim of an act of dating violence in the future. See Acevedo v. Williams, 985 So.2d 669, 669-70 (Fla. 1st DCA 2008) (noting that “in cases of dating violence,” section 784.046(2)(b) “permits any person who is a victim of such violence ... to file a petition for such an injunction whenever there is reasonable cause to believe the petitioner ... is in imminent danger of suffering dating violence”). It is not sufficient to have been the victim of one incident of dating violence in the past.[2]
In this case, Thomas presented evidence from which the trial court could properly find that she had been the victim of dating violence by Alderman at her house on August 31, 2012. However, Thomas failed to present evidence that she had reasonable cause to believe she was in imminent danger of becoming the victim of dating violence by Alderman in the future. At the first evidentiary hearing, Thomas testified *670 that she had “put up with a year of stalking from this man.” She testified that Alderman had shown up at her son’s bus stop one morning trying to talk to her son and that he “has done things that’s [sic] inappropriate.” She also testified that two of her keys are missing and that she has had to change the locks. She testified that she has text messages from him and that he had created Facebook pages so that he could follow her and her son. She stated that she feels “insecure and unsafe with” Alderman and that he scares her. When the trial judge asked her whether she was in fear of his coming over to her house and doing something to her, Thomas answered, “Yes, sir, because my house has been broken into and my jewelry’s missing.” She also stated that she had threatened to call 911 before and that he had “sat outside the car for hours or on [her] front porch for hours.” The trial court asked if Alderman had ever made any threats to do her bodily harm, and she said “[n]ot until that night” in August. Thomas stated that she filed the petition for injunction “because of past history and what happened at [her] home.”
Alderman testified that he had not spoken to her on the phone or gone by her house since the incident on August 31. Alderman said that he wanted to stay away from Thomas. Alderman denied stalking Thomas on Facebook.
At the second evidentiary hearing, Deputy Cruz testified that a concerned neighbor called regarding the incident in August. When Cruz spoke to Thomas, she was upset and told him that she had never been in a situation like that before. Alderman’s son testified that his father had been arrested before in Texas, but the son could not remember if Alderman had to participate in anger management classes. Alderman’s counsel called Thomas to testify, and he asked her if Alderman had texted her only three times since the August incident. Thomas said Alderman had texted her “[w]ay more than three text messages,” but she did not testify to the nature of those messages. She testified that Alderman sent her twenty to thirty texts in early September, but she admitted that she did not include that information in her petition. Thomas believed that Aider-man broke into her house and stole a $2000 diamond ring that he had given her and that he had wanted back when they had broken up one time before. She admitted that she filed charges against him for theft on September 17 and then filed the petition for injunction on September 18. She also testified to the following:
There’s been several events throughout the year where he has shown up at my son’s bus stop, told my son not to show up there at the bus stop. He has driven by the house while I’ve been sitting outside. He has sent emails, texts. He is just a person that does not go away.
She testified that he stalked her before the breakup and that he “becomes a bully” and “threatening,” but she did not provide any further details. She admitted that she filed the petition based on Alderman’s continuing contact and the fact that her house had been burglarized.
Alderman testified that he stopped by Thomas’s son’s bus stop nine months ago, looking for Thomas. He also said that after the incident in August, he texted Thomas requesting to pick up some of his equipment from her house and to express his sympathy upon her father’s death. He testified that Thomas had texted him to let him know that she had laid her father to rest. He testified that she never indicated that she was afraid of him and that she never asked him to stop texting her. Alderman denied that he had a history of violence against women, but he admitted that he had been arrested in Texas based on an allegation made by his ex-wife dur *671 ing their divorce proceedings. He denied that he had a warrant out in Biloxi, Mississippi, relating to his ex-wife.
At the conclusion of the second eviden-tiary hearing, the trial court found that violence had occurred and that “the evidence is sufficient to show that [Thomas] is in fear of future violence.”
A review of the transcripts leads us to conclude that while Thomas may have been the victim of one act of dating violence in August 2012, she did not present evidence establishing an objectively reasonable fear that she is in imminent danger of becoming the victim of another act of dating violence. See Randolph v. Rich, 58 So.3d 290, 292 (Fla. 1st DCA 2011) (holding, in the context of domestic violence injunctions, that “the law requires that the party seeking the injunction must present sufficient evidence to establish the objective reasonableness of his or her fear that the danger of violence is ‘imminent’ ”). Thomas did not present any evidence that Alderman had threatened her or had done anything else that would support an objective fear of imminent danger. Cf. Waler v. Lovett, 905 So.2d 972, 973 (Fla. 5th DCA 2005) (holding that petition for dating violence injunction was sufficient where petitioner alleged that respondent had committed incidents of violence against her and had threatened her by telling “her that she was ‘dead’ ”). She testified that Alderman was a bully and had threatened her, but with the exception of her testimony regarding the incident in August 2012, the entirety of her testimony regarding Alderman’s behavior was eonclusory and vague.
Thomas did testify that Alderman had “stalked” her, and stalking is considered “violence” for purposes of section 784.046. See § 784.046(l)(a). But stalking occurs when a person “'willfully, maliciously, and repeatedly follows, harasses, or cyber-stalks another person.” § 784.048(2). “ ‘Harass’ means to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose.” § 784.048(l)(a). Most of Alderman’s “stalking” behavior, according to Thomas, occurred while the two of them were dating, and it consisted of Aider-man’s emailing, texting, driving by Thomas’s house, and “not go[ing] away.” Because the parties were dating on and off during this time and because Thomas did not testify to the nature of these communications or how she reacted to them, it cannot be said that this behavior constituted stalking or would reasonably cause Thomas to fear that she would be the victim of stalking in the future.
The only evidence of Alderman’s behavior after the incident in August 2012, when the parties broke up, was Thomas’s general testimony of the “many” texts Alderman sent to Thomas in early September 2012 and the Facebook stalking. Thomas did not specify or explain the nature of these communications from Alderman, and she did not testify regarding her emotional responses after receiving these communications or that she asked Alderman to stop contacting her. In fact, Thomas admitted she texted Alderman during this period of time, and Alderman testified that he text-ed Thomas on two occasions, once to seek the return of his belongings and once to express his condolences upon the death of her father. Therefore, Thomas failed to demonstrate that Alderman’s actions caused her substantial emotional distress, that they served no legitimate purpose, that they were done willfully or maliciously, and that she had an objective fear that they would continue in the future. Cf. Werner v. Scharlop, 867 So.2d 1172, 1173 (Fla. 4th DCA 2004) (holding that respondent’s behavior caused substantial emo *672 tional distress when he “continued to call, write letters and send e-mails to the victim” for a year, despite petitioner’s repeatedly telling him “that she wanted no further contact with him”). Her vague testimony was insufficient to show that she had reasonable cause to believe she was in imminent danger of becoming the victim of future stalking by Alderman, especially in light of Alderman’s testimony that he wants nothing more to do with Thomas.
Because there was no competent, substantial evidence that Thomas reasonably believed she was in imminent danger of becoming the victim of another act of dating violence, the trial court abused its discretion in entering the final judgment of injunction. See Arnold v. Santana, 122 So.3d 512, 513 (Fla. 1st DCA 2013) (holding that a trial court has broad discretion in entering an injunction for protection against violence but that it must be supported by competent, substantial evidence). We also note that Thomas’s petition was insufficient because she failed to allege facts demonstrating that she reasonably believed she was in imminent danger of becoming the victim of another act of dating violence.
In light of our reversal, we do not address Alderman’s other arguments except to point out that the approved form for a dating violence injunction is defective because it does not require a petitioner to allege that he or she has reasonable cause to believe he or she is in imminent danger of becoming the victim of an act of dating violence. Florida Family Law Rule of Procedure Form 12.980(n) provides in section III, paragraph 8, for a petitioner to explain how he or she “genuinely fears dating violence by Respondent,” but there is no mention of a fear of “imminent danger of becoming the victim of an act of dating violence,” as required under section 784.046(2)(b). We suggest that the Family Law Rules Committee examine form 12.980(n) to determine if it is in need of amendment.
Reversed and remanded.
ALTENBERND and WALLACE, JJ., Concur.

. Thomas has chosen not to appear in this appeal.

. We note that "[s]ection 784.046(2) contains three separate and distinct causes of action” for injunctions against violence and that "each cause of action contains allegations that differ from the other two.” Morrell v. Chadick, 965 So.2d 1277, 1279-80 (Fla. 2d DCA 2007).