NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

SAMMIE HOROWITZ,                              )
                                             )
            Appellant,                        )
                                             )
v.                                            )        Case No. 2D13-3871
                                             )
MAUREEN P. HOROWITZ,                          )
                                             )
            Appellee.                         )
                                             )
_____)

Opinion filed April 1, 2015.

Appeal from the Circuit Court for Polk
County; Jalal Harb, Judge.

Rafael J. Echemendia of Echemendia Law
Firm, P.A., Lakeland, for Appellant.

No appearance for Appellee.

CRENSHAW, Judge.

        Sammie Horowitz challenges a final judgment of injunction for protection

against domestic violence issued for the protection of his estranged wife, Maureen P.

Horowitz.  Because there was not competent, substantial evidence establishing that

Mrs. Horowitz was a victim of domestic violence or that she was in imminent danger of

becoming a victim of domestic violence, we reverse.

In her petition for an injunction, Mrs. Horowitz alleged both that she was the victim of domestic violence, namely cyberstalking, and that Mr. Horowitz had engaged in behavior that led her to believe she was in imminent danger of becoming a victim of domestic violence. As this court explained in Branson v. Rodriguez-Linares, 143 So. 3d 1070, 1071 (Fla. 2d DCA 2014), either basis, when proved by competent, substantial evidence, would support issuance of the injunction. After an evidentiary hearing, the trial court found that Mrs. Horowitz had presented sufficient evidence to support the allegations in her petition and granted the injunction. However, the trial court did not specify whether it was granting the petition because Mrs. Horowitz established that she actually was a victim of domestic violence or because she established that she had reasonable cause to believe she was in imminent danger of becoming a victim of domestic violence. Thus, we address both bases.

Cyberstalking is a form of domestic violence against which a person may obtain an injunction. Id.

> "Cyberstalk" means to engage in a course of conduct to communicate, or to cause to be communicated, words, images, or language by or through the use of electronic mail or electronic communication, directed at a specific person, causing substantial emotional distress to that person and serving no legitimate purpose.

§ 784.048(1)(d), Fla. Stat. (2013). Mrs. Horowitz alleged that she was the victim of cyberstalking based on two posts on Mr. Horowitz's Facebook page. The first post contained the lyrics to Atlantic Starr's 1985 single "Secret Lovers." The second of Mr. Horowitz's posts contained the text of a private message conversation that Mrs. Horowitz had with a third party via her own Facebook account. Mrs. Horowitz testified that these posts showed Mr. Horowitz either "hacked" her computer or was somehow

spying on her because she had recently been listening to "Secret Lovers" on her personal computer in the privacy of her own home and because her private message conversation would have only been observable by accessing her personal Facebook account. She also testified that unbeknownst to her, there was a keylogger program, which would track her computer use, installed on her personal computer and that Mr. Horowitz told her he had someone watching her. She did not present any evidence that Mr. Horowitz actually installed the keylogger.

Mr. Horowitz's Facebook posts do not meet the statutory definition of cyberstalking for two reasons. First, the posts were not "directed at a specific person." § 784.048(1)(d). The testimony showed that Mr. Horowitz posted the information to his own Facebook page. Screenshots of the posts admitted into evidence confirm that they were posted to Mr. Horowitz's page and that Mrs. Horowitz was not "tagged" or mentioned, nor were the posts directed to her in any obvious way. Unlike email communication, which this court considered to be cyberstalking in Rodriguez-Linares, 143 So. 3d at 1071, posts to one's own Facebook page are not directed at a specific person but are instead posted for all of the user's Facebook "friends" to see, depending on the user's privacy settings. The testimony adduced at the hearing showed that Mrs. Horowitz was able to view the posts by visiting Mr. Horowitz's Facebook page because the two were still "friends" on the social networking website. Although Mrs. Horowitz's assertions that Mr. Horowitz somehow "hacked" into her Facebook account are disconcerting, that behavior alone does not amount to cyberstalking as it is not an electronic communication. See Young v. Young, 96 So. 3d 478, 478 (Fla. 1st DCA 2012) ("Ms. Young's acts in the case at bar, which consisted of changing her husband's

- 3 -

password, appropriating his emails, and including them in a filing in their divorce proceeding, do not amount to cyberstalking, because they were not electronic communications by her of 'words, images, or language . . . directed at' Mr. Young."). Even considering the posts in the context of Mr. Horowitz's statements that he had someone watching Mrs. Horowitz, they do not qualify as cyberstalking. See Arnold v. Santana, 122 So. 3d 512, 513 (Fla. 1st DCA 2013) (reversing injunction where "Appellant sent [Appellee] text messages in which he warned her to change her passwords because he was tracking everything she was doing, and informed her that he was also following her").

Second, Mrs. Horowitz failed to show that the posts caused her "substantial emotional distress." § 784.048(1)(d). She testified that the posts were "a matter of concern" to her and that they "prevented [her] from having any privacy within [her] own home." The record is devoid of any other mention of Mrs. Horowitz's reaction to the posts. Because her testimony as to her reaction to the posts was "conclusory and vague" it was insufficient to show that she had been a victim of domestic violence. See Alderman v. Thomas, 141 So. 3d 668, 670-71 (Fla. 2d DCA 2014) (reversing injunction where petitioner testified "that she feels 'insecure and unsafe with' [respondent] and that he scares her").

Having concluded that Mrs. Horowitz failed to show that she was the victim of domestic violence, we now turn to the issue of whether she established that she had reasonable cause to believe she was in imminent danger of becoming a victim of domestic violence. We conclude that she did not.

- 4 -

In attempting to show that she was in danger of becoming a victim of domestic violence, Mrs. Horowitz testified as to three instances of past physical abuse on the part of the Mr. Horowitz, the most recent of which occurred no less than fifteen years prior to the filing of the petition. She further testified that "a few times over the years" he held his hand in the shape of a gun, pointed it at her, and stated "til death do us part." She added that Mr. Horowitz would "routinely" stand in the doorways of rooms she was in and block her from leaving, which she found to be intimidating. Mrs. Horowitz could not provide a specific time or place that Mr. Horowitz engaged in these behaviors. Near the end of her direct examination, the following exchange occurred:

> [Counsel]: Are you afraid of this man?
> [Mrs. Horowitz]: Yes.
> [Counsel]: Are you afraid he'll hurt you physically?
> [Mrs. Horowitz]: Eventually, yes.

The physical incidents identified by Mrs. Horowitz are too remote to be considered reasonable cause to believe that she was in imminent danger of becoming a victim of domestic violence. See Gill v. Gill, 50 So. 3d 772, 744 (Fla. 2d DCA 2010) ("[A]n isolated incident of domestic violence that occurred years before a petition for injunction is filed will not usually support the issuance of an injunction in the absence of additional current allegations."); Jones v. Jones, 32 So. 3d 772, 773 (Fla. 2d DCA 2010) (reversing injunction where petitioner presented evidence of a pushing incident occurring three years prior and a statement from the respondent that he was not threatening wife "yet"). Likewise, the allegations regarding Mr. Horowitz's "finger-gun" gesture, his habit of "routinely" blocking Mrs. Horowitz's path, and her statement that she was afraid he would eventually hurt her, although troubling, are too vague to

provide competent, substantial evidence supporting the injunction.  See <u>Alderman</u>, 141 So. 3d at 671-72.

Reversed.


WALLACE and LUCAS, JJ., Concur.