NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JOSEPH C. DOUGLAS,            )
                             )
         Appellant,          )
                             )
v.                           )        Case No.  2D17-2175
                             )
KATHRYN ANN DOUGLAS,         )
                             )
         Appellee.           )
_____ )

Opinion filed August 1, 2018.

Appeal from the Circuit Court for Pinellas
County; Jack Helinger, Judge.

Nancy S. Paikoff and O. George Bamis of
MacFarlane, Ferguson & McMullen,
Clearwater, for Appellant.

J. Andrew Crawford of J. Andrew Crawford,
P.A., St. Petersburg, for Appellee.


SILBERMAN, Judge.

Joseph C. Douglas, the Husband, seeks review of a final judgment of

injunction for protection against domestic violence in favor of Kathryn Ann Douglas, the

Wife.  We reverse because the final judgment is not supported by competent,

substantial evidence that the Wife had an objectively reasonable fear of imminent

domestic violence.

Section 741.30(6)(a), Florida Statutes (2016), provides for the issuance of an injunction "when it appears to the court that the petitioner is either the victim of domestic violence as defined by s. 741.28 or has reasonable cause to believe he or she is in imminent danger of becoming a victim of domestic violence." "Although an act of domestic violence need not be completed before one may seek injunctive relief, if fear alone is the 'reasonable cause' alleged to support the injunction, then not only must the danger feared be imminent but the rationale for the fear must be objectively reasonable as well." Oettmeier v. Oettmeier, 960 So. 2d 902, 904 (Fla. 2d DCA 2007). This court reviews a finding of an objectively reasonable fear of imminent domestic violence for competent, substantial evidence. Id. at 905.

Domestic violence is defined as "any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another family or household member." § 741.28(2). This definition requires a threat or showing of violence, and general harassment is insufficient. Young v. Smith, 901 So. 2d 372, 373 (Fla. 2d DCA 2005). "An injunction against domestic violence requires malicious harassment that consists at the very least of some threat of imminent violence, which excludes mere uncivil behavior that causes distress or annoyance." Arnold v. Santana, 122 So. 3d 512, 514 (Fla. 1st DCA 2013) (quoting Young v. Young, 96 So. 3d 478, 479 (Fla. 1st DCA 2012)).

When the Wife filed the petition for injunction in March 2017, the parties were in the midst of divorce proceedings. They had been residing together in the marital home with their three minor children until just a few days before the petition for

injunction was filed. The Wife testified that the Husband had a history of alcohol abuse and losing his temper. She claimed that the Husband had injured her in 1998 and 2011 by grabbing her arms hard enough to cause bruising. And the parties offered differing versions of four incidents in the week before the petition was filed.

The trial court refused to grant the injunction based on the 1998 and 2011 incidents because they were too remote in time. However, the court granted the injunction based on its conclusion that this history coupled with the Wife's version of the four incidents in March 2017 established an objectively reasonable fear of imminent domestic violence. We cannot second-guess the court's finding that the Wife's evidence was more credible than the Husband's, so we set forth the evidence as presented by the Wife. See Jeffries v. Jeffries, 133 So. 3d 1243, 1244 (Fla. 1st DCA 2014).

The first incident occurred on March 13, 2017. The Wife informed the Husband that she would be working late at her clothing boutique due to a private event. The Husband texted her at 9:30 p.m. and asked where she was. She replied that she was still at the boutique. The Husband drove his truck to the boutique and arrived at around 10:30 p.m. As the Husband pulled into the parking lot, the Wife and her clients were exiting the building. The Husband parked but did not turn off or get out of the vehicle. After a few minutes, the Husband revved his engine and peeled out of the parking lot. The Wife assumed he was mad at her because he did not greet her or her clients. His actions made one of the women uncomfortable.

Shortly thereafter, the Wife returned to the marital home that the pair were still sharing. She went to the master bedroom to retrieve some clothing, but the

- 3 -

Husband was inside with the door locked. He refused to open the door until the Wife knocked loudly enough to wake the children. The Wife asked the Husband if he was upset with her, but he did not want to talk to her. The Wife spent the night in the guest room.

The second incident occurred three days later on March 16, 2017. The Wife went to a late lunch with a friend, and as the two were leaving the restaurant they ran into the Husband. The Wife asked the Husband what he was doing there, and he said he was going to get his glasses fixed at a store in the same plaza. The third incident occurred on the following day when the Husband showed up at the same bar as the Wife to celebrate St. Patrick's Day. There was no contact between the two.

The fourth incident occurred two days later on March 19, 2017, at the marital home. When the Wife walked into the kitchen that morning, the Husband confronted her about not attending their child's basketball game. The Husband called her "mother of the year" and a narcissist. He came within two feet of her and pointed his finger at her face. When the Wife went upstairs, the Husband followed her into the master bathroom. The Husband demanded that she open the safe and show him her wedding ring. When she said there was nothing in the safe, the Husband called her a liar. He was standing inches away from her and pointing his finger in her face again.

The Wife said she was going to call the police. The Husband responded that he was going to call the police and blocked her from leaving the room. During this argument, one of their sons was showering in the master bathroom. When he came out of the shower, the Husband stepped away from the door. The Wife ran downstairs, grabbed her cell phone, and called the police. The Husband also called the police.

Then the Wife ran back upstairs and locked herself in the bathroom with their son. The Husband got a coat hanger and unsuccessfully tried to unlock the bathroom door. He also asked their son to open the door, but the boy did not comply. The police arrived. They classified the matter as a simple verbal dispute and left without making an arrest.

In this case, the Wife did not establish any threatened or actual violence during the four incidents the court relied upon to grant the injunction. The facts of this case are analogous to those the First District found insufficient to support an injunction against domestic violence in Arnold, 122 So. 3d 512. In Arnold, the wife testified that she locked herself in the bathroom during an argument with the husband and that he kicked the door down. Id. at 513. She claimed that the husband texted her warnings that he was tracking her online transactions. He also said he was following her. The wife asserted that the husband had hit her three or four years earlier and that the marriage involved a great deal of verbal abuse. Id.

The First District concluded that the wife did not set forth competent, substantial evidence to establish that she reasonably believed she was in imminent danger of domestic violence. Id. at 514. The court explained that the wife did not allege that the husband hurt her when he broke the bathroom door down or that he threatened violence in his texts. The only allegation of violence occurred several years prior to filing and was an isolated incident. And there was no allegation that the husband had since threatened to do violence to the wife. Id.

In this case, the only allegations of violence occurred even further in the past than that in Arnold. And the allegations that formed the basis for the injunction were essentially the same. The Wife asserted that the Husband's showing up at the

same locations meant he was following her like the husband in <u>Arnold</u>.  And as in <u>Arnold</u>, the other incident was a verbal argument that resulted in the Wife locking herself in the bathroom.  Unlike in <u>Arnold</u>, the Husband used no force to enter the bathroom.

Also as in <u>Arnold</u>, the Husband made no threats to do violence to the Wife.  Indeed, the Husband twice attempted to deescalate arguments with the Wife.  The night of the incident at the boutique the Husband declined her offer to discuss the matter and sent her away from their bedroom.  And when the Wife refused to open the parties' safe during the incident at the marital home, the Husband actually called the police to get them to intervene.

As in <u>Arnold</u>, the Husband's actions were insufficient to establish that the Wife reasonably believed she was in imminent danger of domestic violence.  <u>See also</u> <u>Stone v. Stone</u>, 128 So. 3d 239, 241-42 (Fla. 4th DCA 2013) (holding that evidence of the husband's abandoned attempt to have intercourse with the wife, numerous texts and phone calls that caused her mental anguish, and a few surprise appearances "was simply insufficient to establish a fear of imminent danger").  Indeed, the Husband's actions in this case were more akin to "mere uncivil behavior that causes distress or annoyance."  <u>Arnold</u>, 122 So. 3d at 514.  Accordingly, we reverse the final injunction.

Reversed.

CASANUEVA and SLEET, JJ., Concur.