NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

LOUIS PATRICK DI STEFANO, SR.,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Appellant,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Case No. 2D18-3180
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
REBECCA BAUER LONG,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Appellee.⠀⠀⠀⠀⠀⠀⠀)
_____)

Opinion filed August 9, 2019.

Appeal from the Circuit Court for
Hillsborough County; Cecelia Moore
Wilhite, Senior Judge.

Matthew E. Thatcher of The Solomon
Law Group, P.A., Tampa, for
Appellant.

No appearance for Appellee Rebecca
Bauer Long.

ROTHSTEIN-YOUAKIM, Judge.

⠀⠀⠀⠀⠀Louis Patrick Di Stefano, Sr., appeals from a final judgment of injunction

for protection against dating violence (after notice) granting the petitioner, Rebecca

Bauer Long, a permanent injunction against him. Because the evidence failed to

establish that Long had reasonable cause to believe that she was in imminent danger of

becoming the victim of another act of dating violence, we reverse.

Pursuant to section 784.046(2)(b), Florida Statutes (2017):

> Any person who is the victim of dating violence and has reasonable cause to believe he or she is in imminent danger of becoming the victim of another act of dating violence, or any person who has reasonable cause to believe he or she is in imminent danger of becoming the victim of an act of dating violence . . . has standing in the circuit court to file a sworn petition for an injunction for protection against dating violence.

Although the statute appears to create two categories of potential victims, that appearance is illusory; regardless of whether the petitioner has been the victim of dating violence in the past, the petitioner must show that he or she has reasonable cause to believe that he or she is in imminent danger of becoming the victim of an act of dating violence *in the future*. Alderman v. Thomas, 141 So. 3d 668, 669 (Fla. 2d DCA 2014) ("In either case, the person must have reasonable cause to believe he or she is in imminent danger of becoming the victim of an act of dating violence in the future.").

In her petition, Long alleged that in March 2018, Di Stefano had "yanked" her arm with enough force that she had been thrown across the bedroom. She also alleged that in June 2018, following a verbal confrontation in front of Di Stefano's house, she had driven off in her car as he gave chase on foot, screaming obscenities at her. Long alleged that she had reasonable cause to believe that she was in imminent danger of becoming the victim of another act of dating violence because "[t]he Respondent has serious anger issues and has repeatedly called [her] names, yelled obscenities at [her], threw [her] across the bedroom, and ran after [her] in an aggressive manner on foot while [she] was in [her] vehicle fleeing from him," and that "[t]he Respondent has a long and documented history of violence towards women." She alleged further that she feared that Di Stefano, who "lives in close proximity to [her] where [she] live[s] alone

- 2 -

with [her] children," would "commit violence against [her] and/or [her] children," that he "drinks excessive amounts of alcohol on a daily basis," that he "has a violent past," and that "[she is] in fear for [her] life at this time."

At the hearing on the petition, Long testified that Di Stefano has a violent past, that he becomes violent when he gets angry, and that she was afraid. Di Stefano did not refute Long's testimony that during the first alleged incident, he "got really angry, took [her] by the arm, slung [her] across his bedroom, and [she] fell on the floor." Although their testimony regarding the second alleged incident was generally consistent, their perspective of the events differed considerably. Long testified that she had gone to Di Stefano's house after they had broken up to "speak to him about some relationship issues" and that Di Stefano had become "enraged" and had "run[] at her," causing her to jump into her car and speed away, with him pursuing her on foot "screaming obscenities." Di Stefano testified that Long had sped away after angrily confronting him and one of his minor children about his continuing relationship with his ex-wife. Di Stefano did not deny that he had pursued Long but testified that he had done so to admonish her for speeding because there were children in the neighborhood and also for "discuss[ing] [his] sex life with one of [his] children." During the chase, Long had pulled over onto the median to stop and film Di Stefano with her cellphone.

A trial court has broad discretion in entering an injunction for protection against dating violence, but the injunction must be supported by competent, substantial evidence. See Alderman, 141 So. 3d at 672 (citing Arnold v. Santana, 122 So. 3d 512, 513 (Fla. 1st DCA 2013)). On appeal, Di Stefano challenges only the sufficiency of the evidence establishing that Long has reasonable cause to believe that she is in imminent

danger of becoming the victim of another act of dating violence. When considering whether a petitioner has such reasonable cause, "the trial court must consider the current allegations, the parties' behavior within the relationship, and the history of the relationship as a whole." Toubail v. White, 141 So. 3d 649, 650 (Fla. 4th DCA 2014) (quoting Gill v. Gill, 50 So. 3d 772, 774 (Fla. 2d DCA 2010)).

We agree with Di Stefano that the evidence was insufficient to establish that Long has reasonable cause to believe that she is in imminent danger of becoming the victim of another act of dating violence. The parties testified that they live in the same community—"a thousand feet from each other"—and engage in activities that cause them to bump into each other fairly regularly. But Long did not allege, let alone present evidence, that, for example, Di Stefano has stalked her or harassed her or threatened her with violence. Although she alleged in her petition that Di Stefano has a "history of violence towards women," her testimony at the hearing established that the basis for that allegation was hearsay, and her related testimony that "[t]here's been injunctions filed against him in the past" and "[h]e's had a lot of interaction with the court" was both vague and wholly unsupported by any evidence.

Long's allegations that Di Stefano has repeatedly called her names and yelled obscenities at her do not give rise to reasonable cause to believe that she is in imminent danger of becoming the victim of another act of dating violence. Cf. Douglas v. Douglas, 252 So. 3d 791, 793 (Fla. 2d DCA 2018) ("An injunction against domestic violence requires malicious harassment that consists at the very least of some threat of imminent violence, which excludes mere uncivil behavior that causes distress or

- 4 -

annoyance." (quoting Arnold, 122 So. 3d at 514)).  Nor does her conclusory and wholly unsupported allegation that Di Stefano has "serious anger issues."

With respect to the parties' behavior within their roughly year-long relationship and the history of their relationship as a whole, we in no way condone Di Stefano's actions, but their testimony suggested a relationship in which both had difficulty controlling their tempers.  Unfortunately, the manner in which they conducted themselves at the hearing only reinforced that suggestion.  The trial court was repeatedly forced to warn both parties not to talk over each other; not to talk over the court; not to report what other people, who were not present, had supposedly said about the other party; not to relate irrelevant instances of each other's past behavior; and generally not to engage in unruly and disrespectful conduct.  Finally, the court stated: "That's enough, that's enough, that's enough, that's enough.  You—obviously you all need an injunction to stay apart.  If you [Di Stefano] decide to file one against [Long], you may do so.  But for the meantime—," at which point Di Stefano interrupted. Subsequently, the bailiff had to verbally step in.  The parties' arguments eventually devolved into bickering over Di Stefano's "glaring" at Long at their community pool and the need to avoid each other at community softball games.

We sympathize with the trial judge, who demonstrated extraordinary patience with both parties, and we wholeheartedly agree that the parties need to stay away from each other. But Long failed to present any evidence to support the conclusion that she has reasonable cause to believe that she is in imminent danger of becoming the victim of another act of dating violence. Accordingly, we must reverse the injunction.

Reversed.

NORTHCUTT and SILBERMAN, JJ., Concur.