# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————————

Case No. 5D2023-1821
LT Case No. 2023-10976-FMDL

———————————————————

MICHAEL ADAMS,

    Appellant,

    v.

CASEY L. COX,

    Appellee.

———————————————————

On appeal from the Circuit Court for Volusia County.
Matthew M. Foxman, Judge.

Martin A. Pedata, of Law Office of Martin Pedata, DeLand, for
Appellant.

No Appearance for Appellee.

May 2, 2025

MacIver, J.

Michael Adams appeals a final injunction for protection
against dating violence entered in favor of his former girlfriend,
Casey L. Cox. On appeal, Adams argues: (1) the evidence was not
legally sufficient to support a finding that Cox was in imminent
danger of future violence; (2) the trial court deprived him of due
process by refusing to allow him to present evidence in his defense;
and (3) the trial court improperly stepped into the role of an

advocate. We agree that the injunction is not supported by competent, substantial evidence of an imminent threat and that Adams was denied a full and fair hearing. Accordingly, we reverse the injunction. We note that the record does not support a finding that the trial judge acted improperly as an advocate. However, because the appeal is otherwise resolved we decline to reach that issue.

## I.

Adams and Cox were in a romantic relationship from September 2022 until early 2023. On April 20, 2023, Cox petitioned for injunction for protection against dating violence, alleging that Adams had committed acts of violence against her and that she feared imminent future violence. In her petition, Cox described two incidents of past violence by Adams and claimed that she had recently received harassing phone calls and text messages from unknown numbers, which she believed were initiated by Adams. A temporary injunction was issued, and the matter proceeded to an evidentiary hearing on May 10, 2023, at which both parties represented themselves.

At the hearing, Cox testified that Adams had physically attacked her two times during their relationship. Adams, in turn, denied ever harming Cox. Cox also testified that over the months preceding the hearing, she had been repeatedly called or texted by three unfamiliar phone numbers. She stated that one voicemail message left by an unknown caller sounded like Adams's voice, and that some text messages contained personal information (such as her home address and her child's school) that led her to suspect Adams was behind them. Yet Cox admitted she was not certain that Adams was the caller, and she did not present the actual voicemail or text messages as evidence.

For his part, Adams tried to introduce documentary evidence—apparently phone records or other proof—to show that the phone numbers were not associated with him, but the trial court declined to admit these documents. The judge told Adams to "hold on" to his papers and explained, "I need to figure out whether two people should legally be separated from one another. That's why I need to talk to you. Your words are what matter." The court

did not permit Adams to call any other witnesses or to authenticate his proof regarding the messages.

After briefly questioning both parties, the court found that "there was an active dating relationship; there was violence, by the competent and substantial evidence," and announced that it would grant the injunction. The trial judge noted that he was limiting the injunction's duration to one year because he did not want to "saddle [Adams]" with a permanent injunction. A final judgment of injunction was entered, and Adams timely appealed.

II.

*Sufficiency of the Evidence*

A trial court may issue an injunction for protection against dating violence only if the petitioner proves both that she was a victim of dating violence and that she has "reasonable cause to believe [she] is in imminent danger of another act of dating violence." § 784.046(2)(b), Fla. Stat. (2023); *Nuila v. Stolp*, 188 So. 3d 105, 106 (Fla. 5th DCA 2016). We review the trial court's findings for competent, substantial evidence. *Id.* (citing *Toubail v. White*, 141 So. 3d 649, 650 (Fla. 4th DCA 2014)). Cox's evidence established the first two statutory elements—a recent dating relationship and an incident of past violence—but failed to establish the critical third element of imminent future violence.

Cox, for example, did not testify that Adams threatened her with further harm after their breakup, and it was unrefuted that the two had no direct contact for several months before the injunction hearing. The only evidence offered to show a continuing threat were the anonymous phone calls and texts that Cox suspected were from Adams. *Cf. Johnson v. Brooks*, 567 So. 2d 34, 35 (Fla. 1st DCA 1990) (holding that several harassing phone calls alone, even containing threats, were not sufficient for the trial court to grant injunctive relief).

That said, suspicion alone is not proof. *See Corrie v. Keul*, 160 So. 3d 97, 99 (Fla. 1st DCA 2015) (reversing injunction when there was no allegation or evidence of an overt act that showed respondent had the ability to carry out threats or that justified a

belief that violence was imminent); *Alderman v. Thomas*, 141 So. 3d 668, 670–71 (Fla. 2d DCA 2014) (reversing injunction where petitioner's testimony "that she feels 'insecure and unsafe with' [respondent] and that he scares her" was "conclusory and vague"). Cox conceded she lacked concrete evidence tying those communications to Adams, and the content of the messages—while disturbing—was not shown to include any direct threats or uniquely identifying information known only to Adams. In fact, Cox herself acknowledged in her petition that she was "almost" certain the messages came from Adams, implying she was not sure. Because the sender of the messages was never authenticated and no other objective evidence of looming danger was presented, Cox's fear of imminent violence rested only on Adams's past conduct.

Florida law is clear that to obtain an injunction for protection against dating violence, "[i]t is not sufficient to have been the victim . . . of dating violence in the past." *Alderman*, 141 So. 3d at 669. Rather, section 784.046 specifically requires that the petitioner have "reasonable cause to believe he or she is in imminent danger of becoming the victim of an act of dating violence" in the future. *See* § 784.046(2)(b). This differentiates a dating violence injunction from other violence injunctions. *See, e.g.*, §§ 784.046(2)(a), (c), .0485; *see also Schultz v. Moore*, 282 So. 3d 152, 153–54 (Fla. 5th DCA 2019) ("Unlike injunctions for protection against repeat violence and sexual violence under section 784.046(2)(a), (c) and injunctions for protection against stalking under section 784.0485, dating violence injunctions must be predicated on the reasonable prospect of a future violent act."). In *Nuila*, for example, this Court reversed an injunction where the former girlfriend proved one act of dating violence but presented no evidence of any further threats or contact indicating an ongoing danger. 188 So. 3d at 106. Similarly, here, though the trial court found Cox's testimony about the past violence to be credible, there was no competent, substantial evidence that Cox had a reasonable cause to believe she was in imminent danger of another act of violence. We thus conclude that the injunction is not supported by the evidence and cannot stand. *See id.* (holding that the third element of imminent danger was not proven and thus the injunction should not have been issued).

*Denial of Due Process*

Adams also argues that the injunction must be reversed because the court denied him a meaningful opportunity to be heard.

We review this claim of a due process violation de novo. *See Whitfield v. Meeks*, 324 So. 3d 565, 569 (Fla. 1st DCA 2021). Parties in injunction proceedings are entitled to due process of law, including the rights to present evidence, testify on one's own behalf, call witnesses, and cross-examine the opposing party. *Id.* at 569–70; *Ohrn v. Wright*, 963 So. 2d 298, 300 (Fla. 5th DCA 2007) ("To satisfy the constitutional and statutory imperative of due process, at an injunction hearing, the parties must have an opportunity to prove or disprove the allegations made in the complaint. All witnesses should be sworn, each party should be permitted to call witnesses with relevant information, and cross-examination should be permitted." (citing *Utley v. Baez–Camacho,* 743 So. 2d 613, 614 (Fla. 5th DCA 1999))). A trial court's undue restriction of these rights is an abuse of discretion that warrants reversal. *Smith v. Smith*, 964 So. 2d 217, 218–19 (Fla. 2d DCA 2007). Moreover, the denial of fundamental due process in a civil injunctive proceeding constitutes reversible error even absent a contemporaneous objection. *Pettry v. Pettry*, 706 So. 2d 107, 108 (Fla. 5th DCA 1998).

The record here confirms that Adams was not afforded a full opportunity to defend himself at the injunction hearing. The trial judge prevented Adams from introducing the documents he had brought to refute Cox's allegations about the phone calls. *See Porter v. Hoeft*, 951 So. 2d 51, 52 (Fla. 2d DCA 2007) (reversing the final injunction because it was not supported by competent, substantial evidence and adding that "even if sufficient evidence had been introduced, we would still find it necessary to reverse because the circuit court erred in refusing to hear testimony from Porter's witnesses"). The trial judge also never allowed Adams to call any other witnesses or to cross-examine Cox. *See Parise v. Selph*, 175 So. 3d 389, 390 (Fla. 1st DCA 2015) (reversing the final injunction upon concluding the trial court deprived him of a full opportunity to present evidence in opposition to the petition by denying his request to call a witness). Instead, the trial court

5

limited the proceeding to a brief narrative from each party and the court's own questions. By effectively cutting off any evidentiary presentation by Adams, the court denied him a meaningful chance to challenge Cox's evidence or to prove that he did not send the messages at issue. This diverged from the essential requirements of due process. *See Whitfield*, 324 So. 3d at 570 (reversing injunction where trial court refused to permit respondent to present witnesses and evidence); *Ohrn*, 963 So. 2d at 300 (reversing injunction where court curtailed respondent's testimony and case-in-chief). We hold that this fundamental error provides an independent basis for reversal.

We therefore reverse the final judgment of injunction for protection against dating violence and vacate the injunction.

REVERSED and VACATED.

JAY and SOUD, JJ., concur.

––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––