PER CURIAM.
Appellant, Robert Lee Randolph, seeks review of the final judgment of injunction for protection against domestic violence entered against him based upon the petition of his former wife, and current next door neighbor,[1] Philicia Corine Rich. We reverse because the evidence presented at the hearing on the petition was legally insufficient to support the injunction.
In order for the trial court to issue an injunction for protection against domestic violence, the party seeking the injunction must establish that he or she has an objectively reasonable fear that he or she is in “imminent danger of becoming the victim of any act of domestic violence.” § 741.30(l)(a), Fla. Stat. (2010); see also Moore v. Hall, 786 So.2d 1264, 1266 (Fla. 2d DCA 2001); Gustafson v. Mauck, 743 So.2d 614, 615 (Fla. 1st DCA 1999). In evaluating these issues, the trial court must consider the behavior of the party against whom the injunction is sought in the context of the current threats and the parties’ relationship and its history. See Gustafson, 743 So.2d at 616.
Here, the focus of the petition and the evidence at the hearing was on an incident between the parties at their child’s school on August 26, 2010. On the day of the incident, Ms. Rich was involved in a conversation with the director of the after school program when Mr. Randolph arrived to pick up the parties’ child. Mr. Randolph approached the women and attempted to snatch some papers out of Ms. Rich’s hands. Mr. Randolph did not get the papers and he was told by the program director to leave the school, which he did. Although there was testimony that Mr. Randolph touched the papers that Ms. Rich was holding, there was no evidence that he physically touched her. And, although Ms. Rich testified that she felt threatened by the encounter, there was no evidence of any verbal threats made by Mr. Randolph during the incident.
This incident is insufficient to support the injunction, even when considered within the context of the parties’ relationship. At the hearing, Ms. Rich made passing reference to domestic violence occurring during the parties’ marriage, but the record does not reflect the nature or extent of *292 the violence.[2] Ms. Rich also testified that, since their divorce, Mr. Randolph “repeatedly” harassed her by telephone and email, but the only specific testimony on that issue concerned an August 19, 2009 voicemail and an August 25, 2010 email. Ms. Rich testified that in the voicemail, Mr. Randolph threatened to “get [her]” and “devote all of his time to getting [her].” When asked by the trial court how she interpreted the voicemail, Ms. Rich testified that Mr. Randolph had “physically gotten [her] in the past” and that she did not know what he was going to do.[3] The email, which was addressed to both Ms. Rich and her current husband, concerned the parties’ child and did not contain any threats.
Mr. Randolph acknowledged in his testimony that the parties’ interactions are not cordial, and it is clear from the parties’ testimony that they have an unpleasant relationship. The acrimonious nature of the parties’ relationship is supported by the record, which reflects that there have been four previous petitions for domestic violence injunction filed by the parties (three by Ms. Rich and one by Mr. Randolph), all of which were dismissed. While a petitioner does not have to wait for abuse to occur in order to seek an injunction under section 741.30, Florida Statutes, see Gustafson, 743 So.2d at 616, the law requires more than general relationship problems and uncivil behavior to support the issuance of an injunction. See Gill, supra (“[Generalized threats to engage in unpleasant, but not violent, behavior are not sufficient to support the issuance of a domestic violence injunction.”); Oettmeier v. Oettmeier, 960 So.2d 902, 904 (Fla. 2d DCA 2007) (reversing domestic violence injunction where evidence merely “painted ... a typical, albeit unfortunate, picture of a domestic relationship gone awry”). Rather, the law requires that the party seeking the injunction must present sufficient evidence to establish the objective reasonableness of his or her fear that the danger of violence is “imminent.” Such evidence was lacking here.
Accordingly, we reverse the final judgment and remand with directions that the trial court vacate the injunction entered against Mr. Randolph.
REVERSED and REMANDED with directions.
BENTON, C.J., PADOVANO and WETHERELL, JJ., concur.

. Ms. Rich testified that Mr. Randolph moved into the neighboring house shortly after their divorce. Mr. Randolph testified that he owned the house where he currently lives before the parties were married. On the same day the final judgment was entered, the trial court entered a separate order amending the final judgment to ‘'recognize that the parties ... reside within 500 feet of one another and accordingly, it shall not be considered a violation of the [injunction] for either party to be physically present at their respective residences.”

. Mr. Randolph mentioned in his testimony an incident during the parties’ marriage that resulted in a "battery charge.” However, Mr. Randolph also testified that the parties attended mediation after the incident and that he and Ms. Rich resumed marital relations for some period after the incident. The parties' marriage was dissolved in 2007, several years before the petition in this case, so this incident alone would not support the issuance of the injunction. See, e.g., Gill v. Gill, 50 So.3d 772 (Fla. 2d DCA 2010) ("[A]n isolated incident of domestic violence that occurred years before a petition for injunction is filed will not usually support the issuance of an injunction in the absence of additional current allegations.”).

. Ms. Rich testified that she called the police based upon the voicemail, but Mr. Randolph was not arrested. This incident was a year before the petition in this case.