# Third District Court of Appeal

## State of Florida

Opinion filed June 7, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1693
Lower Tribunal No. 16-13656
_____

## Iraelio Alcolea Leal,

Appellant,

vs.

## Orielyn Diaz Rodriguez,

Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Ariana Fajardo Orshan, Judge.

Cristobal D. Padron & Assoc., P.A. and Cristobal D. Padron, for appellant.

Orielyn Diaz Rodriguez, in proper person.

Before ROTHENBERG, LOGUE and LUCK, JJ.

LUCK, J.

Husband Iraelio Alcolea Leal and wife Orielyn Diaz Rodriguez have been married for five years and have a child together, but by June 2016 the marriage had fallen apart. Diaz petitioned for a domestic violence injunction based on an

incident on June 3. The trial court, after an evidentiary hearing, granted the petition and entered the "final judgment of injunction for protection against domestic violence with minor child(ren)." Leal appeals the final injunction because, he contends, it was not supported by competent substantial evidence. We disagree, and affirm.

The trial court may grant an injunction where "the petitioner is either the victim of domestic violence . . . or has reasonable cause to believe he or she is in imminent danger of becoming a victim of domestic violence." § 741.30(6)(a), Fla. Stat. (2016). "Domestic violence" is "any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another family or household member." Id. § 741.28(2). Domestic violence, in sum, "requires some showing of violence or a threat of violence." Young v Smith, 901 So. 2d 372, 373 (Fla. 2d DCA 2005). General harassment, general relationship problems, and uncivil behavior are not enough. Id.; Randolph v. Rich, 58 So. 3d 290, 292 (Fla. 1st DCA 2011).

"In determining whether a petitioner has reasonable cause to believe he or she is in imminent danger of becoming a victim of domestic violence, the court shall consider and evaluate," among other factors, "[t]he history between the

2

petitioner and the respondent, including threats, harassment, stalking, physical abuse"; "[w]hether the respondent has attempted to harm the petitioner or family members or individuals closely associated with the petitioner"; "whether the respondent has physically restrained the petitioner from leaving the home"; and "whether the respondent has destroyed personal property" belonging to the petitioner. Id. § 741.30(6)(b)(1)-(10). That is, the trial court must consider "the current allegations, the parties' behavior within the relationship, and the history of the relationship as a whole." Gill v. Gill, 50 So. 3d 772, 774 (Fla. 2d DCA 2010).

Here, Diaz (the wife) and Leal (the husband) had been having problems for the last two years.[1] When they were still living together, Leal would not let Diaz work, have friends, or have a relationship with her family. Leal would control Diaz's time and money. When Leal finally let Diaz work, he would accuse her of being somewhere else if she were five minutes late. When Leal would get upset with Diaz, he would "turn violent" and try to take her immigration paperwork. Diaz testified that the last time Leal hit her was in 2015. When Diaz finally ended the relationship for good in August 2015, Leal threatened to leave her without her car, license plate, and money.

---

[1] The facts are taken from Diaz's testimony at the injunction hearing. The only two witnesses were Diaz and Leal, and the trial court credited Diaz's testimony and discredited Leal's. Leal does not challenge the trial court's credibility finding on appeal.

After the separation, Diaz and Leal would speak by telephone about their son but Leal would make offensive comments. Diaz then stopped talking to Leal by telephone and would only communicate via text message but Leal still would make the same comments.

The relationship came to a boil on June 3, 2016. On that day, Diaz met Leal in the parking lot of her apartment building to exchange their son. She held a backpack with their son's aerosol machine. Leal came toward her using offensive expressions and ordering their son to take the backpack. Diaz asked Leal to take the backpack instead as it was very heavy. Leal continued to use offensive language so Diaz put the bag down and turned to leave. Leal ran up to Diaz and said "f**kin'A, I'm going to destroy your life, you don't know who I am, my name is Iraelio Alcolea Leal with a capital I. Your mother and your father are going to cry. And you are safe because you are the mother of my son, if not I will destroy your life."

From this evidence, we conclude, as the trial court did, that Diaz established reasonable cause to believe she was in imminent danger of becoming a victim of domestic violence. Leal angrily came at Diaz on June 3, 2016, used profanity, asked her if she knew who he was, and told her that he would destroy her life and make her parents cry. The fact that Leal would make Diaz's parents cry indicated that this was more than an uncivil fight or relationship squabble about the

4

separation or child-sharing arrangement. Rather, Leal's make-your-parents-cry statement was a threat that what he would do to destroy Diaz would be so bad as to make her parents upset to the point of tears. Together, the physical act of approaching Diaz from his car, cursing at her, telling her he was going to "destroy" her life and make her parents cry, demonstrate a threat by Leal to be violent towards Diaz.

Diaz's belief, moreover, that Leal threatened her with violence was objectively reasonable. See Randolph, 58 So. 3d at 292 ("[T]he law requires that the party seeking the injunction must present sufficient evidence to establish the objective reasonableness of his or her fear the danger of violence is 'imminent.'"). Considering the factors in section 741.30(6)(b), as the court must, Leal had turned violent against Diaz before, and as recently as 2015. Leal controlled Diaz's relationships with family and friends. Leal restricted Diaz from leaving their home. Leal tried to take away Diaz's immigration paperwork, and threatened to take away her car, license and money. And Leal's confrontation with Diaz was in front of their child, in the parking lot of Diaz's apartment building. Given these facts, Leal's assurance that "you are safe" because Diaz was the mother of his son did not make Diaz's belief any less reasonable. That they shared a child had not stopped Leal from confronting Diaz in the parking lot, sending offensive text

5

messages, being violent with her in the past, and controlling her friends, family, money, and work.

This case is most similar to Giallanza v. Giallanza, 787 So. 2d 162 (Fla. 2d DCA 2001), where the court found the evidence sufficient to support the initial injunction. Id. at 164 ("[W]e agree that the Wife's allegations in her initial petition were sufficient to warrant the trial court's entry of the initial injunction in July 1995."). There, in a 1995 petition for domestic violence injunction, the wife alleged that her husband slammed her into a door jamb in 1985, wrapped his hands around her neck in 1987, and "had recently been very angry and verbally abusive to her due to the parties' impending divorce." Id. at 163.

Here, too, we have evidence of prior violence and angry and abusive conduct. The prior violence, however, was much more recent (one year rather than eight) and the angry and abusive conduct was more specific and severe. Together with Leal's controlling behavior and attempts to take Diaz's immigration documents, we conclude that there was competent substantial evidence supporting the trial court's finding that Diaz had reasonable cause to believe she was in imminent danger of becoming a victim of domestic violence.

Affirmed.

6