# Third District Court of Appeal

**State of Florida**

Opinion filed March 28, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-451
Lower Tribunal No. 17-272
_____

**Dennis Zarudny,**
Appellant,

vs.

**Evgeniya Zarudny,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, William Altfield, Judge.

Michael P. Mirer, for appellant.

Evgeniya Zarudny, in proper person.

Before EMAS, FERNANDEZ, and LINDSEY, JJ.

LINDSEY, J.

Appellant Dennis Zarudny (the "husband") appeals the trial court's Final Judgment of Injunction for Protection Against Domestic Violence with Child(ren) (the "Final Injunction") entered on February 16, 2017. This Court has jurisdiction under Florida Rule of Appellate Procedure 9.030(b)(1)(A). Because the Final Injunction was supported by competent, substantial evidence, we affirm.

## I.    BACKGROUND

Dennis and Evgeniya Zarudny had been married for nearly seven years when things began to unravel during the fall of 2016. However, it is the events commencing on New Year's Eve of 2016, culminating with the Petition filed on January 5, 2017 by Evgeniya Zarudny (the "wife") For Injunction For Protection Against Domestic Violence With Children (the "Petition"), that bring this case before us.

In the Petition, the wife alleged that the husband is addicted to alcohol, abuses marijuana, and refuses to take medication for his mental disability. The wife further alleged that on December 30, 2016, she got into a verbal conflict with the husband over booking flights for a vacation. Following the argument, the wife stated that the husband was upset and began drinking while she took their daughter to the swimming pool. The wife further stated that on December 31, 2016, she woke up and found the husband asleep on the couch after a night of drinking and

that the husband started drinking again around 7:30 a.m. and proceeded to consume alcohol throughout the rest of the day.

The wife alleged that a physical confrontation between her and the husband occurred later that day when the husband disabled the lock to their twenty-month-old daughter's bedroom door in order to gain entry while the wife was putting the daughter down for a nap. The wife stated that, despite her protest that their daughter needed to sleep, the husband began playing with the daughter and shoved the wife into the door to prevent the wife from stopping him. She further stated that a verbal argument followed, after which the wife left the apartment with their daughter for a few hours.

The wife and the daughter returned later in the evening of December 31, 2016, whereupon the wife stated that the husband asked her to prepare everything for New Year's Eve while he took a nap on the couch. The wife also stated that the husband was upset that she woke him up only twenty minutes before midnight and that she only bought one bottle of champagne. Thereafter, according to the wife, in the early morning hours of January 1, 2017, the husband continued to drink heavily and, despite the fact that she and the daughter were sleeping nearby, the husband purposefully turned the television volume extremely loud. The wife stated that after she disabled the television by cutting the cable cord, the husband broke the bedroom lock and attempted to physically remove the wife from the bed

3

by flipping the mattress and ripping the sheets off. In addition, the wife stated that the husband then, while still very intoxicated, proceeded to play with their crying daughter despite the wife's pleas to stop. Afraid for the safety of the daughter, the wife stated that she eventually was able to pack a bag and leave the apartment with the child around 1:00 or 2:00 a.m.

Then, the wife stated, when she and the daughter returned the following morning, she and the husband got into a heated verbal argument during which the husband threatened to send the wife back to Russia and take away the daughter. The wife took cellphone videos during the verbal argument that showed the husband continually screaming at the wife in a threatening manner. Fearing for her own safety as well as the daughter's safety, the wife alleged, she called the police.

On January 5, 2017, the wife filed the Petition and a temporary injunction was issued. A hearing was held, after proper notice on February 16, 2017, where the wife testified as to the allegations in the Petition. The wife described physical abuse by the husband within the last three years, explaining how she had previously called police because of alleged physical violence. The wife further described the husband's harassing behavior between December 31, 2016 and January 1, 2017, when he relentlessly followed the wife around the apartment to prevent her from having time to herself.

After viewing and considering the cellphone videos, the testimony of the wife and the husband, as well as the demeanor of the witnesses throughout the hearing, the trial court concluded that the wife was in reasonable fear of the husband and was a victim of domestic violence. The trial court further found the husband's threatening and violent behavior especially concerning because it occurred in front of the daughter. The Final Injunction, issued on February 16, 2017, was for a period of one year and required the husband to attend the Batterer's Intervention Program, complete anger management classes, and be evaluated for alcohol abuse. Additionally, the trial court explained at the conclusion of the injunction hearing that the husband's visitation rights with the daughter, the living arrangements between the husband and the wife, and the temporary child support, among other issues, would have to be resolved with the Case Manager or through the Family Court. The Final Injunction also incorporated the Case Manager's recommendation that the wife temporarily have 100 percent time-sharing responsibility of the daughter, while the husband was permitted one scheduled, supervised visit per week. This timely appeal follows.

## II.    STANDARD OF REVIEW

A trial court's conclusion of law that a petitioner is entitled to a final judgment of injunction against domestic violence is reviewed *de novo*. See Achurra v. Achurra, 80 So. 3d 1080, 1082 (Fla. 1st DCA 2012) (citing Puskar v.

5

<u>Puskar</u>, 29 So. 3d 1201 (Fla. 1st DCA 2010)). "When evaluating whether competent, substantial evidence supports a trial court's ruling, [l]egal sufficiency . . . as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal." <u>Stone v. Stone</u>, 128 So. 3d 239, 240 (Fla. 4th DCA 2013) (alteration in original) (quoting <u>Brilhart v. Brilhart ex rel. S.L.B.</u>, 116 So. 3d 617, 619 (Fla. 2d DCA 2013)).

### III. ANALYSIS

The husband contends the trial court abused its discretion when it entered a permanent injunction against him because it was not based on competent, substantial evidence. The husband further contends the trial court committed reversible error when it awarded sole custody of the husband and wife's minor daughter to the wife and limited the husband's contact with the daughter to supervised visitation without first considering whether it was in the best interest of the daughter.

Under section 741.30, Florida Statutes (2017), a trial court may grant an injunction when "the petitioner is either the victim of domestic violence" or where there is "reasonable cause to believe he or she is in imminent danger of becoming a victim of domestic violence." § 741.30(6)(a). Under section 741.28(2), Florida Statutes (2017), "[d]omestic violence" is defined as "any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking,

6

aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another family or household member." § 741.28(2). Thus, domestic violence "requires some showing of violence or a threat of violence," while general relationship problems and uncivil behavior are not enough. See Leal v. Rodriguez, 220 So. 3d 543, 545 (Fla. 3d DCA 2017) (first quoting Young v. Smith, 901 So. 2d 372, 373 (Fla. 2d DCA 2005); and then citing Randolph v. Rich, 58 So. 3d 290, 292 (Fla. 1st DCA 2011)).

In order for a trial court to issue an injunction for protection against domestic violence, the petitioner must demonstrate that he or she has an objectively reasonable apprehension that they are in "imminent danger of becoming the victim of any act of domestic violence." Randolph, 58 So. 3d at 291 (quoting § 741.30(1)(a)). When determining whether a petitioner has reasonable cause to believe he or she is in such imminent danger, the trial court "must consider the current allegations, the parties' behavior within the relationship, and the history of the relationship as a whole." Leal, 220 So. 3d at 545 (quoting Gill v. Gill, 50 So. 3d 772, 774 (Fla. 2d DCA 2010) (internal quotations omitted)).[1]

---

[1] Pursuant to section 741.30(6)(b), when determining whether a petitioner has reasonable cause to believe he or she is in imminent danger of becoming a victim of domestic violence, a court "shall consider and evaluate all relevant factors," including, but not limited to: (i) "[t]he history between the petitioner and the respondent, including threats, harassment, stalking, physical abuse"; (ii) "[w]hether the respondent has attempted to harm the petitioner or family members or

7

Here, based on the testimony and evidence in the record, we conclude, as the trial court did, that the wife sufficiently demonstrated an objectively reasonable belief that she was in imminent danger of becoming a victim of domestic violence. Contrary to the claims of the husband, the Final Injunction order was not an abuse of discretion by the trial court because it was based on competent, substantial evidence.

After considering the cellphone videos of the husband's frightening screams and the testimony of the wife and husband, as well as the demeanor of the witnesses during the hearing, the trial court found the wife to be "very credible," the victim of domestic violence, and in reasonable fear of continued domestic violence at the hands of the husband. Moreover, the husband repeatedly testified as to how he was angry and upset with the wife and did in fact consume large quantities of alcohol between December 30, 2016 and January 1, 2017. The husband also confirmed that he "disabled all locking mechanisms" throughout the apartment and that the wife previously called the police because "she was afraid that I'm gonna beat her up." Although the husband denied shoving the wife into the door on December 31, 2016, he did admit to "[m]aybe a touch."

individuals closely associated with the petitioner"; (iii) "[w]hether the respondent has threatened to conceal, kidnap, or harm the petitioner's child or children"; (iv) "[w]hether the respondent has physically restrained the petitioner from leaving the home"; (v) and "[w]hether the respondent has destroyed personal property" belonging to the petitioner. § 741.30(6)(b)(1)-(10).

8

The instant case is similar to Leal, where this Court found sufficient evidence to support a domestic violence injunction. 220 So. 3d at 546 ("[T]here was competent substantial evidence supporting the trial court's finding that [the wife] had a reasonable cause to believe she was in imminent danger of becoming a victim of domestic violence."). In Leal, there was evidence of prior violence and angry abusive conduct, as well as controlling behavior by the husband that included threats to the wife's immigration status. Id. Here, too, we have evidence of angry and abusive conduct—which occurred at times in front of the minor child—as well as evidence of prior violence.

There is also evidence of controlling behavior by the husband, such as his threats to send the wife back to Russia and to take away the daughter. Furthermore, there is evidence that the husband has a serious substance abuse problem and did in fact become physical with the wife on December 31, 2016. Thus, we conclude that there was competent, substantial evidence supporting the trial court's Final Injunction order.

Lastly, the husband argues the trial court erred in approving a temporary time-sharing plan where the wife was awarded 100 percent of the time-sharing, while he was only permitted one supervised visit per week, because the trial court failed to first consider whether it was in the best interest of the child. More specifically, the husband contends that the trial court failed to properly consider

the factors enumerated in section 61.13(3)(a)-(t), Florida Statutes (2017). We disagree.

"The shared parental responsibility law, section 61.13, Florida Statutes (2002), applies to custody disputes between unmarried parents as well as married parents." Decker v. Lyle, 848 So. 2d 501, 503 (Fla. 2d DCA 2003) (citing Stepp v. Stepp, 520 So. 2d 314 (Fla. 2d DCA 1988)). Although separate findings as to each factor in section 61.13(3) are not required to sustain a temporary award, nevertheless, the record or the final judgment must reflect that the custody determination was made in the best interests of the child. Id. at 503 (citing Williams v. Williams, 845 So. 2d 246 (Fla. 2d DCA 2003)); see also Ryan v. Ryan, 784 So. 2d 1215 (Fla. 2d DCA 2001); Julian v. Bryan, 710 So. 2d 1037 (Fla. 2d DCA 1998); Bader v. Bader, 639 So. 2d 122 (Fla. 2d DCA 1994) (en banc); Armstrong v. Panzarino, 812 So. 2d 512 (Fla. 4th DCA 2002). In Spano v. B.B., this Court noted that "where custody, visitation and support considerations are implicated in the context of alleged domestic violence, the better practice is for the trial court to enter a temporary order under Chapter 741 while directing the parties to litigate custody and visitation matters in family court." 947 So. 2d 635, 636 (Fla. 3d DCA 2007) (citing Cleary v. Cleary, 711 So. 2d 1302 (Fla. 2d DCA 1998)).

A review of the injunction hearing transcript reveals that the trial court was especially cognizant of the child's best interest and that the husband's threatening and abusive behavior occurred "in front of th[e] child." The trial court also considered how violent and verbal abuse is exacerbated in situations, like here, where children see and hear it. The length of the marriage, history of violence and prior abuse, mental health of the husband, and financial disposition of the parties were all considered. The wife repeatedly testified that she was afraid for the safety of the daughter, and that the daughter's wellbeing was her priority throughout this process. Thus, the trial court clearly considered the factors set forth in section 61.13(3)(a)-(t), Florida Statutes (2017), in determining that the wife temporarily have 100 percent time-sharing responsibility for the daughter. In addition, the trial court advised the husband of the temporary nature of the determination and the opportunity to pursue a change in the time-sharing arrangement through proceedings in the Family Court. Accordingly, we conclude there was competent, substantial evidence supporting the trial court's findings and the Final Injunction.

AFFIRMED.