# Third District Court of Appeal

**State of Florida**

Opinion filed October 10, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-2541
Lower Tribunal No. 17-22673
_____


**Lazaro Regalado Lopez,**
Appellant,

vs.

**Jennifer Regalado,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Ariana Fajardo Orshan, Judge.

Nancy C. Wear, for appellant.

Jennifer Regalado, in proper person.


Before ROTHENBERG, C.J., and FERNANDEZ and SCALES, JJ.

ROTHENBERG, C.J.

The appellant, Lazaro Regalado Lopez ("Regalado"), appeals from a final judgment of injunction for protection against domestic violence with children entered on October 23, 2017 in favor of his estranged wife, Jennifer Regalado ("Jennifer"). Regalado also appeals from two separate orders that were entered on the same day. One order modified Regalado's time-sharing schedule with his minor children from unsupervised to supervised, and the other awarded Jennifer temporary support. Regalado claims that the trial court abused its discretion and that the trial court's orders violated his due process rights. For the reasons that follow, we affirm the final judgment of injunction and reverse the orders modifying the time-sharing schedule and awarding Jennifer temporary support.

## BACKGROUND

Regalado and Jennifer were married in 2009, and they have three minor children: M.R., J.R., and N.R. On September 26, 2017, Jennifer filed for divorce in Miami-Dade County Circuit Court, and that case ("the divorce action") remains pending. Regalado has a history of bipolar disorder. Jennifer makes reference to this history in her petition(s) for injunction for protection against domestic violence with children. Her first petition, filed under Case No. 16-30210 ("the 2016 DV action") on December 23, 2016, was granted on March 7, 2017, and was renewed monthly until it expired on September 7, 2017.

2

On October 3, 2017, Jennifer filed a second petition for injunction for protection against domestic violence with children, Case No. 17-22673 ("2017 DV action"). In the petition, Jennifer checked off the following boxes as being applicable:

a. Committed or threatened to commit domestic violence defined in 741.28, Florida Statutes, as any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another.

b. Previously threatened, harassed, stalked, or physically abused the petitioner.

c. Attempted to harm the petitioner or family members or individuals closely associated with the petitioner.

d. Threatened to conceal, kidnap, or harm the petitioner's child or children.
. . . .

g. Physically restrained the petitioner from leaving the home or calling law enforcement.

h. A criminal history involving violence or threat of violence . . . .

i. Another order of protection issued against him/her previously or from another jurisdiction.

j. Destroyed personal property, including but not limited to, telephones or other communication equipment, clothing, or other items belonging to the petitioner.

k. Engaged in any other behavior or conduct that leads the petitioner to have reasonable cause to believe he or she is in imminent danger of becoming a victim of domestic violence.

. . . .

In addition to the checked items noted above, Jennifer included handwritten factual allegations with her petition. She alleged, among other things, that Regalado had not been taking his medication and that he had been recently hospitalized at the psychiatric ward of Palmetto General Hospital following an altercation with his parents. Jennifer claimed that after Regalado was discharged from the hospital on October 1, 2017, he showed up at her house at 7:00 a.m., half-dressed, wearing a hospital sheet, and looking mentally unstable. She further recounted that Regalado had recently been "playing with fire" and had hurt himself. Lastly, she alleged that Regalado had touched her and tried to kiss her without her consent.

The trial court conducted a hearing on the petition on October 23, 2017. Both parties attended the hearing. At the hearing, Jennifer, who testified consistent with her handwritten allegations, testified that Regalado offered a bizarre explanation as to why he was not properly dressed when he showed up at her house unannounced. Specifically, Jennifer testified that Regalado told her that he had donated his clothes and shoes to charity, and that was why he was shirtless and barefoot. She also testified that Regalado grabbed her "hard" "sexually," and

4

"tried to force a kiss." Because of his demeanor, Jennifer stated that she felt that her children were at risk, she did not allow Regalado to see them, and she filed a police report.

Jennifer also testified that Regalado had shown up at her house on three prior occasions following the expiration of the last restraining order. She explained that Regalado had been texting her, and coming to her house between 4:00 and 5:00 a.m., asking to take the children to school, but when the security guard in her community alerted her to Regalado's presence, she would deny him entry. Upon questioning by the trial court, Jennifer claimed that in addition to the October 1, 2017 incident, Regalado had also been violent with her on prior occasions. Specifically, she explained that in 2009, Regalado had choked her at his parents' house, and on a separate occasion, while at a hotel, Regalado broke a table and battered her with parts of the broken table.

Regalado, who also testified at the hearing, initially denied the allegations and claimed that he had been taking his medication. However, when questioned, he conceded that he had showed up at Jennifer's house on a particular morning between 4:00 and 5:00 a.m., when he was not supposed to pick up the children on that day. Regalado also conceded that on October 1, 2017, he showed up at Jennifer's house half-dressed wearing a sheet, that the paramedics found him at a high school in Weston, and that his explanation was that he had "given up [his

5

shirt] and shoes for donation there." In attempting to explain this behavior, Regalado testified that he had been walking all night and had foot pain, so he called 911 from his cell phone and the paramedics who responded took him to the hospital, where he was found to be dehydrated, was placed on an IV for hydration, and was later released. Regalado's explanation as to why he showed up at Jennifer's house unannounced was that he wanted to see his children and try to save his marriage.

Upon further questioning by the trial court, Regalado also admitted to assaulting Jennifer and attempting to kiss her without her consent. In an attempt to explain these actions, he stated the following:

> It's not that I grabbed her hard, or nothing. I just treat her . . . like my wife. I mean for Christ's sake, she's still my wife. Do I have to ask permission to kiss my wife. . . . I mean, are we getting to that point?

During the hearing, the trial court *sua sponte* raised the issue of time-sharing. Upon questioning by the trial court, Jennifer testified that given the circumstances, she felt that unsupervised visits were no longer appropriate. She further testified that she had noticed changes in her children after their return from spending time with Regalado, and that her daughter is depressed, has low self-esteem, and is being treated by a therapist. Following the hearing, the trial court concluded that, "[a]fter taking testimony from the parties [and] having reviewed

the evidence, this Court find[s] sufficient evidence to warrant [the] issuance of a permanent injunction for a period of 18 months."

Thereafter, the trial court entered two additional orders. One order, captioned "Order Granting Temporary Child Support," awarded Jennifer $400 per month in temporary child support. The other order, captioned "Order of Referral to Family Court Services," changed Regalado's time-sharing with the minor children from unsupervised to supervised visits. Both orders were entered by the trial court assigned to the 2017 DV action, however, both were filed in the divorce action. This appeal followed.

## STANDARD OF REVIEW

"[A] claim that a party has been denied procedural due process is reviewed de novo." Vaught v. Vaught, 189 So. 3d 332, 334 (Fla. 4th DCA 2016) (quoting Residential Mortg. Serv. Corp. v. Winterlakes Prop. Owners Ass'n, 169 So. 3d 253, 255 (Fla. 4th DCA 2015)). An order granting an injunction in the domestic violence context is reviewed for abuse of discretion. Selph v. Selph, 144 So. 3d 676, 677 (Fla. 4th DCA 2014); see also Kunkel v. Stanford ex rel C.S., 137 So. 3d 608, 609 (Fla. 4th DCA 2014) (concluding that the trial court abused its discretion by entering a domestic violence injunction when the ruling is not supported by competent, substantial evidence). When evaluating whether a trial court's order granting an injunction is supported by competent, substantial evidence, we look at

7

legal sufficiency as opposed to evidentiary weight.  See Brilhart v. Brilhart, *ex rel.*, S.L.B., 116 So. 3d 617, 619 (Fla. 2d DCA 2013).

## ANALYSIS

### I.    Personal Service

The record reflects that there were several unsuccessful attempts to personally serve Regalado with the instant petition for injunction prior to the hearing.  Because these attempts were unsuccessful, Regalado claims that the trial court failed to afford him due process prior to the entry of its orders.  Section 741.30(4), Florida Statutes (2017), provides that in a cause of action regarding a domestic violence petition, the respondent shall be "personally served" with a copy of the petition.   As we have explained, "[i]t is axiomatic that a party defending against a [domestic violence] claim is entitled to due process, including the right to proper and adequate notice of the allegations which form the basis for the relief sought."  Sanchez v. Marin, 138 So. 3d 1165, 1167 (Fla. 3d DCA 2014).    In this context, due process implications come into play where the petitioner raises, and the trial court admits, "significant and substantial—but unpled—allegations."  De Leon v. Collazo, 178 So. 3d 906, 908 (Fla. 3d DCA 2015).   In other words, the concern is that the respondent be given an opportunity to be present, to be heard, and to address the allegations in the petition.  See Newsom v. Newsom, 221 So. 3d

8

1265, 1266 (Fla. 1st DCA 2017). In this case, Regalado was present, he was heard, and he addressed the allegations in the petition.

Regalado insists, however, that Vaught v. Vaught, 189 So. 3d 332 (Fla. 4th DCA 2016), supports his request for a reversal. However, Regalado's reliance on Vaught is misplaced, as that case involved the denial of the husband's motion for a continuance, and is easily distinguishable from the instant case. Additionally, in Vaught, there was one incident and one petition of record, whereas this case involves a long history, more than one petition, and several domestic violence injunction renewals. Also, in Vaught, unlike the instant case, the wife was represented by counsel, whereas, the husband was proceeding *pro se*. Id. at 333. More importantly, the husband in Vaught appeared at the final hearing and requested a continuance alleging, among other things, that the wife had raised new allegations in a supplemental affidavit, and that these new allegations were being raised for the first time at the final hearing. Id. The husband in Vaught also claimed that he had evidence that supported his version of the events, but that in light of the wife's supplemental affidavit, he was not prepared to go forward with the final hearing because "[he] didn't know [the wife] was going to come up with all this [new] stuff." Id. The trial court denied the husband's request for a continuance and issued the injunction. Id. On those facts, the Fourth District Court of Appeal concluded that the husband had shown good cause sufficient to

9

warrant a continuance under section 741.30(5)(c) and that the trial court had abused its discretion by denying the request for a continuance. Id. at 334.

In contrast with Vaught, Regalado never claimed he was unprepared, and he never requested a continuance, and although he claims that he was not properly served with the petition, he appeared at the hearing as noticed, and he was personally served with the petition by a court liaison officer in open court. At no time did Regalado proffer evidence that was rejected by the court or complain that he was not being given an opportunity to defend himself. See, e.g., Lopez v. Lopez, 922 So. 2d 408, 410 (Fla. 4th DCA 2006). In fact, the record reflects that Regalado was fully prepared to go forward, did go forward, and requested no continuances. Further, Regalado was aware of the allegations against him based upon the prior petition, the prior injunction, and the extensions and renewals associated therewith. As reflected above, the parties have been involved in at least three separate court cases, i.e., the 2016 DV action, the divorce action, and the 2017 DV action. Regalado knew why he was there, he knew what he was being accused of, and he admitted to the lion's share of the allegations raised by Jennifer.

The record therefore reflects that Regalado was given an opportunity to address the allegations in the petition, many of which were not new and had been raised in prior proceedings, and that Regalado never raised the issue of notice or expressed any concerns about going forward with the hearing. Thus, we conclude

that Regalado's due process rights were not violated and the record supports the trial court's issuance of the injunction.

## II. Final Judgment of Injunction Against Domestic Violence

Regalado also contends that the trial court erred by issuing the final judgment of injunction against domestic violence because he claims that Jennifer was not a victim of domestic violence, and that she failed to present substantial, competent evidence of any objectively reasonable fear of imminent harm. Specifically, Regalado alleges that Jennifer made false allegations that, at best, constitute generalized threats that are insufficient to warrant the entry of a domestic violence injunction. We disagree.

As a general matter, a trial court may issue a domestic violence injunction when the petitioner establishes that "he or she is either a 'victim of domestic violence as defined in section 741.28 **or** has reasonable cause to believe he or she is in imminent danger of becoming the victim of any act of domestic violence.'" Lopez, 922 So. 2d at 410 (quoting § 741.30(1)(a), Fla. Stat. (2005)) (emphasis added). Section 741.28(2) specifically defines domestic violence as "any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another family or household member." When considering whether a petitioner has

reasonable cause to fear becoming the victim of imminent domestic violence, "the trial court must consider the current allegations, the parties' behavior within the relationship, and the history of the relationship as a whole." Giallanza v. Giallanza, 787 So. 2d 162, 164 (Fla. 2d DCA 2001) (quoting Gustafson v. Mauck, 743 So. 2d 614, 616 (Fla. 1st DCA 1999)).

In this case, Jennifer did more than make generic allegations. She set forth a history of violence in the instant petition, as reflected by her handwritten supplement. She described specific incidents where Regalado pushed her, choked her, and injured her using parts of a table that Regalado himself had broken. Her testimony was consistent with the allegations raised in the petition, detailing current and prior instances of violence and manic behavior by Regalado that supported her fear. As reflected above, at the hearing, Regalado admitted to most of the allegations, provided a bizarre explanation for others, and never denied showing up at Jennifer's house unannounced in the early morning hours while half-naked. Regalado admitted to assaulting Jennifer and forcing her to kiss him against her will. He likewise admitted to the altercation at his parents' home and did not dispute or deny Jennifer's allegations of prior violence at a hotel. In sum, the record reflects a cumulative history of similar events and confirms that the subject of the instant petition was not an isolated incident.

12

This case is similar to <u>Zarudny v. Zarudny</u>, 241 So. 3d 258 (Fla. 3d DCA 2018), where we affirmed the trial court's entry of a domestic violence injunction where the respondent had a history of mental disorders, was not taking his prescription medication, was currently and previously abusive and controlling, and had admitted to certain allegations in the petition. As previously discussed at length, a similar pattern exists here.

Based upon the record in this case, we conclude that Regalado's history of violence, abusive conduct, and manic behavior constitutes substantial competent evidence supporting the trial court's findings that Jennifer had an objectively reasonable cause to believe that she was in imminent danger. Accordingly, we find no abuse of discretion by the trial court.

### III.    <u>Orders on Supervised Visits and Temporary Support</u>

Regalado contends that the trial court erred when it modified the time-sharing schedule and awarded Jennifer temporary support because the petition did not request either relief. We agree.

#### A. <u>Time-sharing</u>

"In modification proceedings, as in other civil matters, courts are not authorized to award relief not requested in the pleadings." <u>Worthington v. Worthington</u>, 123 So. 3d 1189, 1190 (Fla. 2d DCA 2013) (quoting <u>Abbott v. Abbott</u>, 98 So. 3d 616, 617 (Fla. 2d DCA 2012)). To grant unrequested relief is an

abuse of discretion and reversible error.  <u>Abbott</u>, 98 So. 3d at 617.  In <u>Worthington</u>, the wife challenged a trial court order that amended the final judgment of dissolution of marriage.   Upon review, the appellate court reversed the portion of the order that modified the time-sharing arrangement because it exceeded the scope of the relief requested in the motions that were noticed to be heard. <u>Worthington</u>, 123 So. 3d at 1190.  Here, like in <u>Worthington</u>, the issue of time-sharing was not raised in the petition or in any motion before the trial court.  In fact, the petition reflects that Jennifer was not seeking a modification of the current time-sharing arrangement.

The form petition utilized by Jennifer provides various options for the petitioner to consider when petitioning the court.  Paragraphs 20(a)-(e) address time-sharing. The options provided are as follows:

    a. Petitioner requests that the Court provide a temporary parenting plan, including temporary time-sharing schedule with regard to the minor child(ren);

    b. Petitioner requests that the Court order supervised exchange of the minor child(ren) or exchange through a reasonable person for purposes of such exchange.  The following is a person suggested as a reasonable person for purposes of the exchange . . .

    c. Petitioner requests that the Court limit time-sharing by Respondent with the minor child(ren);

    d. Petitioner requests that the Court prohibit time-sharing by the Respondent with the minor child(ren) because the Petitioner genuinely fears the Respondent imminently will abuse, remove, or hide the minor child(ren) from Petitioner;

    e.  Petitioner requests that the Court only allows with the [sic] minor supervised time-sharing by Respondent child(ren)[.]

Jennifer specifically marked each of these options "N/A," indicating that none

of these options were applicable. Thus, there was nothing in the petition or the domestic violence court docket which would have placed Regalado on notice that the issue of visitation would be raised at the October 23, 2017 hearing. Further, no such request appears to have been filed in the divorce action. We therefore find that the trial court abused its discretion by granting relief that was not requested. For these same reasons, as well as the reasons that follow, we reach the same conclusion as to the order granting temporary support.

## B. <u>Temporary Support</u>

Just as with time-sharing, Jennifer had the ability to raise the issue of temporary support in her petition. The petition is, however, devoid of any indication that Jennifer was seeking temporary support. Specifically, paragraphs 21-23 of the petition provide the following options:

21.    Petitioner claims that he/she has a need for the money (temporary support) he/she is asking the Court to order Respondent to pay and that Respondent has the ability to pay that money;

22.    Petitioner requests that the Court order Respondent to pay the following
temporary alimony to Petitioner;

23. Petitioner requests that the Court order Respondent to pay the following child support to Petitioner[.]

As with the time-sharing options, Jennifer indicated that none of these options were applicable by marking each one as "N/A." While the trial court raised the issue of time-sharing *sua sponte* in open court, the issue of temporary support was not addressed at all during the hearing. Therefore, no inquiries were made and no evidence was introduced as to either Jennifer's need for support or Regalado's ability to pay.

In addressing matters regarding temporary support, the trial court's discretion is not unfettered. Blum v. Blum, 769 So. 2d 1142, 1143 (Fla. 4th DCA 2000). When ordering temporary support, trial courts must identify, among other things, which portion of the award constitutes child support and which portion is intended to be alimony. Id.; see also Burkhart v. Burkhart, 620 So. 2d 225, 226 (Fla. 1st DCA 1993) (noting that child support guidelines apply to temporary child support awards). In this connection, the trial court must make findings regarding the parties' incomes for purposes of applying the child support guidelines. See Fleischfresser v. Accursio, 833 So. 2d 803, 804 (Fla 3d DCA 2002) (reversing and remanding a temporary support order for a complete reconsideration of the issues with instructions to make specific findings as to both need and ability to pay); see also Nilsen v. Nilsen, 63 So. 3d 850, 851 (Fla. 1st DCA 2011) (reversing an award of temporary support where the trial court failed to indicate how much of the

16

award was intended to be child support and failed to calculate the husband's income). No such findings were made here. Further, there is no explanation in the record as to how the trial court arrived at the $400 figure.

As with the time-sharing order, we conclude that the order granting temporary support exceeded the scope of the relief requested by Jennifer and was, therefore, an abuse of discretion. Further, even if temporary support had been requested in the petition, we find that the trial court failed to make the requisite inquiries and findings as to need and ability to pay. Accordingly, we reverse on this issue as well.

## CONCLUSION

For the reasons stated above, we conclude that the trial did not err or abuse its discretion by entering the domestic violence injunction. We, however, agree with Regalado that the trial court abused its discretion by granting relief that was not requested in the petition. We, therefore, reverse the two separate orders entered with respect to time-sharing and temporary support.

Affirmed, in part; and reversed, in part.

17