# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D18-3938
_____

JEFFERSON EUGENE DAVIS,

    Appellant,

    v.

GILCHRIST COUNTY SHERIFF'S
OFFICE,

    Appellee.

_____

On appeal from the Circuit Court for Gilchrist County.
Monica J. Brasington, Judge.

September 25, 2019

SHARRIT, MICHAEL S., ASSOCIATE JUDGE.

In the aftermath of the infamous Parkland shooting, the legislature enacted section 790.401, Florida Statutes (2018), (otherwise known as "The Marjory Stoneman Douglas High School Public Safety Act," Chapter 2018-3, Laws of Florida). The recently enacted "red flag" statute requires courts to proactively remove firearms from individuals (upon petitions filed by law enforcement agencies) who pose a significant danger to themselves or others.

In this case of first impression, the Gilchrist County Sheriff's Office, believing one of its own deputies, Appellant, Jefferson Davis had become a danger, filed a petition with the trial court, seeking a risk protection order (RPO) and removal of his firearms.

Upon reviewing the petition, the Court below issued a temporary *ex parte* RPO and, in accordance with the statute's protocol, scheduled an evidentiary hearing.

Following a hearing and a determination that Appellant had expressed homicidal ideation and an overt desire to shoot a fellow officer, the trial court issued the amended RPO now under review.

Appellant raises three issues on appeal. First, he argues the trial court misapplied the statute and asserts there was insufficient evidence to support the RPO. Second, he asserts the trial court deprived him of due process, and third, he contends the statute is unconstitutional. We address each issue separately below.

*The Statute*

The RPO statute provides in pertinent part:

> Upon notice and a hearing on the matter, if the court finds by clear and convincing evidence that the respondent poses a significant danger of causing personal injury to himself or herself or others by having in his or her custody or control, or by purchasing, possessing, or receiving, a firearm or any ammunition, the court must issue a risk protection order for a period that it deems appropriate, up to and including but not exceeding 12 months.

§ 790.401(3)(b), Fla. Stat.

*Factual Findings*

The events underlying the RPO and factual findings made by the trial court may be summarized as follows:

The Appellant and his long-time girlfriend were both employed as Gilchrist County Sheriff's Officers. Suspicious of infidelity and an ongoing affair with another officer, the Appellant, while off-duty, confronted his girlfriend at her assigned duty station. The Appellant became belligerent, exhibited a hostile

2

demeanor and threatened a bystander-fellow officer who attempted to intervene. He punched and damaged a solid wood door and a filing cabinet, and inexplicably fell to the floor. In a moment of apparent reflection, the Appellant reached out to his supervisor (the Gilchrist County Sheriff) via text message, requested his help and warned that "something bad was going to happen." Thereafter, in a private meeting, the Appellant told the Sheriff he wanted to kill his girlfriend's paramour. He stated he "want[ed] to shoot him in the face, eat his food, and wait for [law enforcement] to pick me up." Upon further inquiry, Appellant told the Sheriff he would utilize his police issued gun located in his car. Shortly thereafter, he repeated the same or similar words to two other fellow officers. Ultimately, the Appellant was taken to a medical facility and underwent a mental health evaluation. He was thereafter released having been deemed not to be at risk for further violence.

*Risk Protection Order*

In her amended final order, the judge found by "clear and convincing" evidence the Appellant posed a significant danger of causing personal injury to himself or others by having a firearm in his custody or control. On a standard form order the judge specifically "checked off" and annotated the following statutory factors:

· The Respondent engaged in a recent act or threat of violence against himself or <u>others</u>;

· The Respondent engaged in an act or threat of violence, including but not limited to acts or threats of violence against himself or <u>others</u> within the past 12 months;

· The Respondent has used, or threatened to use against himself or <u>others</u> any weapons (firearm).

This appeal presents mixed questions of fact and law. The trial judge's findings of fact are afforded a deferential abuse of discretion standard of review, and will not be disturbed if supported by competent and substantial evidence. The application of the RPO statute to the facts and the legal sufficiency of the

3

evidence are reviewed *de novo*. *Pickett v. Copeland*, 236 So. 3d 1142, 1144 (Fla. 1st DCA 2018). Here, the findings are supported by the record.

Among the evidence presented, the trial judge necessarily weighed the opinion testimony of Appellant's expert neuropsychologist against the testimony of his fellow Sheriffs' officers. In her amended RPO order, the judge afforded "little weight" to the expert opinion that Appellant's reaction to an extreme stressor—i.e. learning of his girlfriend's infidelity—was "probably relatively normal."

When evaluating hostile words underlying petitions for protection, we recognize trial judges are often faced with the difficult task of differentiating between facetious or hyperbolic declarations meant to "blow off steam", and those manifesting a genuine threat. As the trier of fact, the court below was in the best position to weigh the demeanor and credibility of the witnesses. It was within the trial judge's province to discount the expert's opinions and credit the testimony of fellow sheriff's officers; and favorably assess their sincerity and motives. The record contains their testimony describing Appellant having expressed a plan to "shoot him [the paramour] in the head . . . between the eyes," with the handgun located in his car. Fellow officers characterized his behavior as irrational, aberrant and out of character. There was a belief among fellow officers he had experienced a "break down" and that he was in need of a mandatory mental health intervention. Furthermore, the judge was able to evaluate the explanations and admissions made by the Appellant-Respondent himself.

Although it is possible the Appellant's hostile words amounted to no more than hyperbole and hollow threats, we find the record supports a more ominous conclusion. The threats were specific and graphic and made by someone with the wherewithal to carry them out. He was in a position of authority with advanced weapons training and ready access to firearms. In addition, the hostile words were preceded by loss of self-control, open aggression and property damage within a police facility. The evidence is clear and convincing, and this case is easily contrasted with others involving only vague or ambiguous overtures. *See e.g., Sumners v. Thompson*, 271 So. 3d 1232, 1234 (Fla. 1st DCA 2019); *Corrie v.*

4

*Keul*, 160 So. 3d 97, 99 (Fla. 1st DCA 2015) (reversing injunction where there was no evidence of an overt act showing ability to carry out threats). Considering the array of factors and other provisions within the statute, we hold that although trial courts should carefully consider, *inter alia*, evidence of serious or recurring mental illness, (*see* Florida Statute section 790.401(3)(c)3), a lack thereof is not dispositive and does not preclude an RPO. The RPO statute contemplates "red flag" situations where a volatile individual demonstrates mental/emotional instability through threatening and erratic behavior. Such a person need not necessarily have been formally diagnosed with a serious or recurring psychosis. The record below reasonably justifies a finding that the Appellant was at risk for committing a violent crime of passion and posed a significant danger. We find no error in the trial court's conclusion.

### *Due Process*

Appellant asserts two instances of denied due process. We address each in turn.

### *Rule of Sequestration*

The trial judge applied section 90.616, Florida Statutes ("Rule of Sequestration") to Appellant's expert witness, neuropsychologist, Jason Demery, Ph.D., and required him to remain outside the courtroom prior to testifying. Appellant, citing section 90.616(2)(c), asserted his expert was essential to the presentation of his case and should have been permitted to remain in the courtroom prior to giving testimony.

Trial courts are afforded wide discretion in determining which witnesses are "essential" and exempt from the Rule. *Hernandez v. State*, 4 So. 3d 642, 662-663 (Fla. 2009). Under the circumstances, we do not find an abuse of discretion. The subject matter of the expert's testimony pertained to the Appellant's mental health evaluation. Although compromised mental health is an enumerated factor to be considered by the trial judge, it is not a requisite finding for purposes of issuing an RPO. Dr. Demery was properly permitted to present opinion testimony based on his first-hand clinical evaluation of Appellant. Moreover, if counsel for

5

either party wanted Dr. Demery to consider additional information or testimony from other witnesses, they could have provided it by asking him to make certain assumptions. In the course of expressing opinions at trial, experts are routinely provided essential facts by way of hypothetical questions. Lawyers for either party may ask an expert to assume any relevant fact supported by the evidence (or any fact which in good faith is expected to become part of the evidence). *See Burnham v. State*, 497 So. 2d 904, 906 (Fla. 2nd DCA 1986), *review denied*, 504 So. 2d 766 (Fla. 1987); *and see generally*, C. Ehrhardt, Florida Evidence § 704.2 (2019 Ed.). Although expert witnesses are often exempted from the Rule of Sequestration, in light of the foregoing, any arguable misstep in applying the Rule to Dr. Demery was harmless.

*Time Limitation*

The Appellant contends he was unduly constrained in the presentation of his defense and that the trial court's imposition of time limits on the hearing was a denial of due process. The original time allotment was two hours. When, during the course of the proceedings, it became clear more time would be needed the trial judge offered an additional hour (the judge asked Appellant's trial counsel if that is what he wanted to do; and he said it was). In further discussion with the judge, Appellant's attorney appears to have strategically streamlined his witnesses and presentation (i.e., "I probably can elicit more from her and skip him"). Appellant's counsel decided to focus on his expert witness' testimony and thereafter announced: "Nothing further, your Honor." The trial judge then ended the hearing after having added an additional hour and sixteen minutes to the originally scheduled hearing time; and announced her intent to "e-mail an order by the end of the day." Appellant's counsel did not then, nor at any time request a continuance. Appellant's attorney later asserted he was laboring under the mistaken belief that the court would be e-mailing an order scheduling a continuation of the hearing in light of the fact he had remaining witnesses and argument to offer. Instead, the trial court issued the final order now being appealed. Contrary to counsel's interpretation, the judge's closing words indicating she

6

would consider all the testimony and issue an order "tell[ing] you what I'm going to do," imply finality.

Although due process requires each party have a reasonable opportunity to prove or disprove allegations, *Newsom v. Newsom*, 221 So. 3d 1265, 1266 (Fla. 1st DCA 2017) (error to deny respondent opportunity to be present at hearing and address allegations against him), once trial proceedings have commenced, it becomes incumbent upon counsel to make a clear record and unequivocally request a continuance if needed. *See Lopez v. Regaldo*, 257 So. 3d 550, 555-56 (Fla. 3rd DCA 2018) (no due process violation where respondent, though not properly served notice, was present and attempted to address allegations, yet failed to request a continuance) (distinguishing, *Vaught v. Vaught*, 189 So. 3d 332, 334 (Fla. 4th DCA 2016) (finding due process violation where respondent demonstrated good cause for continuance and judge denied motion for same)). The court below was not presented with a definitive motion for continuance upon which to rule. Accordingly, we find no abuse of discretion or denial of due process.

*Constitutional Challenge*

Appellant challenges the RPO statute's constitutionality (for the first time on appeal). He asserts it is facially unconstitutional because certain key terms are vague; it violates substantive due process; and is overbroad. He further argues the statute is unconstitutional as applied to him.

"A constitutional challenge to the facial validity of a statute can be presented for the first time on appeal under the "fundamental error exception," whereas a dispute concerning a constitutional application of a statute to a particular set of acts must be raised at the trial level." *Lamore v. State*, 983 So. 2d 665, 668 (Fla. 5th DCA 2008) (quoting *Trushin v. State*, 425 So. 2d 1126, 1129-30 (Fla. 1982)). Because the "as applied" constitutional argument was not preserved below, we find that issue to be waived and decline further consideration.

When reviewing a statute or ordinance that impairs the exercise of a fundamental right, the court must apply a strict

7

scrutiny test to determine whether the legislation is written to address a specific and compelling state interest. *State v. J.P.,* 907 So. 2d 1101, 1109 (Fla. 2004). Here, the prevalence of public shootings, and the need to thwart the mayhem and carnage contemplated by would-be perpetrators does represent an urgent and compelling state interest.

When considering a facial challenge, our review is necessarily limited. *Abdool v. Bondi*, 141 So. 3d 529, 538 (Fla. 2014). We consider only the text of the statute; not its specific application to a particular set of circumstances. *Id.* To succeed on a facial challenge, the Appellant has a high burden and must demonstrate no set of circumstances exists in which the statute can be considered constitutionally valid. *Id.* "Generally, legislative acts are afforded a presumption of constitutionality and we will construe the challenged legislation to effect a constitutional outcome when possible." *Fraternal Order of Police, Miami Lodge 20 v. City of Miami*, 243 So. 3d 894, 897 (Fla. 2018); *Fla. Dep't of Revenue v. Howard*, 916 So. 2d 640, 642 (Fla. 2005).

Appellant argues the RPO statute is void for vagueness because it leaves too much to the discretion of the trial court and law enforcement in determining what constitutes "significant danger," "relevant evidence," and "mental illness." "A statute is void for vagueness when persons of common intelligence must guess as to its meaning and differ as to its application . . . or if it lends itself to arbitrary enforcement at an officer's discretion." *Fraternal Order of Police, Miami Lodge 20*, 243 So. 3d at 897. "The legislature's failure to define a statutory term does not in and of itself render a provision unconstitutionally vague." *Id.* (quoting *State v. Hagan*, 387 So. 2d 943, 945 (Fla. 1980)).

In our view, there is nothing inherently vague about the terms Appellant would have us scrutinize. We interpret the word "significant" (as in "significant danger") in a manner consistent with standard dictionary synonyms such as "noteworthy, worthy of attention and consequential; as opposed to "trivial." "Significant" is no more or less "vague" than the word "imminent" found in the domestic violence injunction statute (§ 741.30, Fla. Stat). The same is true of the commonly used word, "relevant".

8

Appellant also argues the RPO statute is impermissibly broad and vague because, unlike the domestic violence injunction statute, it is "untethered to any central idea, subject, or danger." Appellant theorizes the list of evidence a court is permitted to consider is impermissibly broader in scope and includes more categories, by comparison, than the purportedly narrower list applicable in domestic violence injunction cases. We find Appellant's argument unpersuasive. The notion that no central idea or danger underlies the purpose of the RPO statute is belied by the Legislature's own explanation for the law:

> The Legislature finds there is a need to comprehensively address the crisis of gun violence, including but not limited to, gun violence on school campuses. The Legislature intends to address this crisis by providing law enforcement and the courts with the tools to enhance public safety by temporarily restricting firearm possession by a person who is undergoing a mental health crisis and when there is evidence of a threat of violence, and by promoting school safety and enhanced coordination between education and law enforcement entities at the state and local level.

Ch. 2018-3, Laws of Fla. § 2.

Appellant further argues the statute is unconstitutional because it violates substantive due process and can potentially be used to punish entirely innocent activity. At the outset, we note the statute's purpose is not punitive, but rather preventative. Furthermore, of the fifteen non-exclusive enumerated factors in the statute that concern "activities", the only ones that may be characterized as "entirely innocent" are numbers three (evidence of being seriously mentally ill), twelve (in part) (abuse of alcohol); and thirteen (evidence of recent acquisition of firearms or ammunition). § 790.401(3)(c)3, 12, and 13, Fla. Stat. Importantly, these are simply factors, among many a court may consider (none of which were relied upon in this case) before issuing an RPO.

The statute also requires a hearing within fourteen days of an RPO petition being filed, thus affording a respondent due process and a prompt opportunity to resist a final order. § 790.401(3)(a),

9

Fla. Stat. Moreover, the statute incorporates an added due process safeguard by requiring proponents to meet the heightened "clear and convincing" burden of proof standard. *Compare* § 790.401(3)(b), Fla. Stat. *with e.g.* Wash. Rev. Code. § 7.94.040(2) (requiring a showing of significant danger by the less stringent "preponderance of evidence" standard). Furthermore, the duration of the RPO may not exceed twelve months, § 790.401(3)(b), and the statute contains a mechanism whereby the respondent can request early termination of the order. § 790.401(6), Fla. Stat. Finally, the statute clearly requires the listed factors be considered within a specific context—the threat of gun violence. § 790.401(3)(b), Fla. Stat.

Our essential task is to focus on "the text of the statute, not a specific application; and "the challenger must demonstrate that no set of circumstances exists in which it can be constitutionally valid." *Fraternal Order of Police, Miami Lodge 20,* 243 So. 3d at 897. Appellant has not so demonstrated, and the statute's constitutional integrity must therefore be upheld.

### *Conclusion*

The trial court's findings of fact are supported by competent and substantial evidence and the RPO statute was properly applied. On the record presented, we uphold the statute's constitutionality, and further reject the asserted due process violations.

AFFIRMED.

RAY, C.J., and LEWIS,[*] J., concur.

---

[*] Judge Lewis was substituted for an original panel member in this proceeding after oral argument. He has viewed the digital recording of oral argument.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Robert L. Case of Stovash, Case & Tingley, P.A., Orlando; Stephen K. Miller of Law Offices of Stephen K. Miller, P.A., Gainesville, for Appellant.

Lindsey B. Lander, Trenton, for Appellee.